BURROWS, Appellant, vs. MADISON PARK AND PLEASURE
    DRIVE ASSOCIATION, Respondent, and STATE HIS-
    TORICAL SOCIETY OF WISCONSIN, Interpleaded, De-
    fendant.

*June 9—July 8, 1922.*

*Wills: Conditions subsequent: Construction: Lands devised for
    park purposes: Forfeiture: Evidence: Sufficiency.*

1. Conditions subsequent are most strongly construed against the
   grantor, and a forfeiture will not be enforced unless clearly
   established.
2. To constitute a forfeiture of land which was devised on condi-
   tion that the same be kept and maintained as a public park
   there must be either an abandonment of the land or a wilful
   disregard of the spirit and purposes of the condition.
3. In an action to enforce the forfeiture of land which had been
   devised to defendant on such a condition, the evidence is *held*
   insufficient to show that defendant had wilfully breached the
   condition to maintain the land for a public park or had
   abandoned or intended to abandon it for park purposes.

APPEAL from a judgment of the circuit court for Dane
county: OSCAR M. FRITZ, Judge. *Affirmed.*

Action of ejectment brought by the plaintiff against the
defendant *Madison Park and Pleasure Drive Association,*
the appeal to this court having been taken by the plaintiff
from a judgment of nonsuit rendered by the circuit court
for Dane county dismissing the complaint with costs, in
favor of the *Association.*

The will of George B. Burrows, dated August 21, 1903,
contains a provision known as the eighth paragraph thereof,
which reads as follows:

"Eighth. I give and devise to the *Madison Park and
Pleasure Drive Association* of Madison, Wisconsin, the
south one-half (S. ½) of my real estate situated in sec-
tion twelve (12) in the town of Madison, Dane county,

Wisconsin, known as the Baywood property, upon the express condition that they shall forever keep and maintain the same as a public park to be always called and known as the 'Burrows Park.' "

Mr. Burrows, who died on the 25th day of February, 1909, left him surviving his son, George Thompson Burrows, his sole heir at law, and said George Thompson Burrows died on the 21st day of October, 1916, leaving no children, but leaving surviving him his widow, the plaintiff *Celeste K. Burrows.* The will of said George B. Burrows was admitted to probate in the county court of Dane county on the 7th day of April, 1909, and on the 6th day of April, 1910, the final decree was entered in the matter of his estate, assigning his property in accordance with the provisions of said last will.

The *Madison Park and Pleasure Drive Association* is a corporation organized under the provisions of ch. 55 of the Laws of 1899 for the purpose of acquiring and maintaining parks and pleasure drives for the use of the public of the city of Madison and in the surrounding territory; and the testator at the time of the making of the will and up to the time of his death was a member of such *Association.*

The plaintiff contends that said *Association* has failed and neglected to comply with the terms and provisions of such devise, and that by reason of such alleged neglect and failure the property so devised reverted to the plaintiff as the heir at law of said George B. Burrows.

The land in question, consisting of about twelve acres, is located north of the limits of the city of Madison, and is adapted for park purposes, having a frontage of about 550 feet on Lake Mendota and extending toward the south to Sherman avenue. After the death of the testator the board of directors of the *Madison Park and Pleasure Drive Association,* by proper resolution, duly accepted such gift and highly commended the donor for his public-spirited generosity. The *Association* is mainly composed of public-spirited

citizens of the city of Madison, and at all times was and is dependent upon the generosity of the public in the form of donations and subscriptions to defray the necessary expenses incidental to carrying out the purpose for which it was created. During the lifetime of the deceased a number of tracts of land within the limits of the city of Madison had been donated for park purposes, and the *Association* from time to time had devoted its means and best efforts towards properly laying out such tracts, of beautifying the same in accordance with approved designs with respect to buildings, drives, and walks, the planting of shrubbery, shade trees, flower beds, etc., and the general maintenance of the tracts so donated for park purposes. Large sums of money had been appropriated, subscribed, and collected, and the efforts of the *Association* have resulted in the creation and maintenance of many public beauty spots and recreation centers, all inuring to the benefit of the public at large. The territory surrounding Burrows Park, even up to the time of the trial of the action, contained but few inhabitants, and it appears that the time had not yet arrived for making extensive and permanent improvements, and that in its efforts to carry out the purposes for which the *Association* was formed, its immediate attention for a number of years past had been directed to perfecting the designs with respect to the parks located within the corporate limits of the city.

Burrows Park is a natural beauty spot; with a large frontage on the lake, with vacant spots readily resorted to for. pleasure purposes, and with a natural forest. Immediately after the acceptance of this park by the city, the *Association*, with a view of determining the possibilities of such tract, engaged the services of one Nolan, a noted expert landscape engineer and designer, and the latter prepared an elaborate plan and design, involving the ultimate permanent improvement of such park, in harmony with the general plan which had been adopted and carried out with respect to other parks in the city of Madison.

A short time after this tract was accepted by the city it was concluded by the *Association* to fill the lower portion thereof, and in order to defray the necessary expenses connected therewith an application was made by the *Association* to the common council of the city for an appropriation, and it appears that the sum of $1,800 was set aside by the council for that purpose, and thereupon contracts were entered into with the La Crosse Dredging Company for the filling of the lower portion of this tract, and about 15,000 cubic yards of fine clay and sand were thereupon pumped from the bed of Lake Mendota onto the low lands of the tract at a cost of about $2,300. The deficiency was covered by an allowance by the dredging company in the sum of $300 and by an additional appropriation by the city in the sum of $200. In the year 1914 a top dressing of manure and sweepings was placed upon the filled land. In the years 1912 and 1913 a road was constructed along the south side of the park so as to facilitate the public in going to the park and the grove and in using the tract as picnic grounds. In order to separate the north half of Baywood from the south half, the latter consisting of the tract devised for park purposes, the *Association* caused a fence to be built. A fence which had previously existed along Sherman avenue was removed and the grounds thrown open for the use of the public. A large portion of the park was graded and seeded with lawn grass. The tract which was filled, which consisted of about five acres, was subsequently overgrown with willows, and in this tract large clearings were made to enable the public to use the same for picnic purposes. A path was laid out and established through this plot to afford ready access to the lake. It also appears that the public living in the neighborhood of the park from time to time used the same for recreation and pleasure and that the portion adjoining the lake was resorted to for bathing purposes.

At the time of the commencement of the action about two acres of the tract were used by the *Association* as a

nursery, it appearing that some 2,500 small trees had been transplanted from some other tract occupied by the *Association,* but such use on the part of the *Association* was and is merely temporary.

For the appellant there was a brief by *Perry B. Miller* of Louisville, Kentucky, and *Gilbert, Ela & Heilman* of Madison, and oral argument by *Mr. Emerson Ela* and *Mr. Miller.*

For the respondent there was a brief by *Schubring, Ryan & Petersen* of Madison, and oral argument by *William Ryan.*

For the defendant *State Historical Society* there was a brief by *Olin, Butler, Thomas, Stebbins & Stroud* of Madison, and oral argument by *Ray M. Stroud.*

DOERFLER, J.  Plaintiff's counsel claim that the eighth provision of the will above set forth constitutes a condition subsequent and that the *Association* failed to maintain said tract for park purposes, as was designed by the testator, and that such failure constituted a breach of the condition subsequent, and that the tract thereupon reverted to the heirs at law of the deceased.  Assuming that the provision of the will referred to creates a condition subsequent, was such condition breached?

Conditions subsequent are most strongly construed against the grantor, and a forfeiture will not be enforced unless clearly established.  In *Mills v. Evansville Seminary,* 58 Wis. 135, 15 N. W. 133, a conveyance was made to a corporation upon condition that the land should be used as a site for a seminary building and should revert to the grantors when it should cease to be used for such purpose. The land was so used for several years, but in 1874, owing to a lack of funds and patronage, the seminary ceased to be maintained.  In 1876, at a meeting attended by only a minority of the voters of the corporation, a resolution was adopted reciting that the seminary had been abandoned as

an institution of learning, and empowering the trustees to convey the land to a manufacturing corporation. The land in question was deeded to the corporation, but the grantee did not take possession, and subsequently abandoned its purpose and reconveyed the premises to the seminary. Thereafter the seminary expended a considerable sum of money in repairing the buildings and again resumed the use of the property for seminary purposes. The original grantors thereupon demanded the surrender of the land to them as reversionary owners. In its opinion in the *Mills Case, supra,* the court said:

"It is doubtless true as claimed by defendants' counsel that courts do not hasten to seize upon mistake or neglect or even misuser of property to adjudge a forfeiture in cases of this nature. Now, according to the testimony of Mr. Mills, the condition was that the premises should be used as a site for a seminary building and grounds only,—the title to revert to the grantors when the property should cease to be used for seminary purposes. The condition imposed upon the defendant corporation the duty of keeping up and maintaining, or causing to be kept up and maintained, an educational institution on the land—a school or academy where young persons could be instructed in the several branches of knowledge and science. But the parties doubtless expected that there would be interruptions in the school for one reason or another and for longer or shorter periods. But such interruptions would not operate as a breach unless they amounted to an absolute and final abandonment of the property for seminary purposes."

In *Bonniwell v. Madison,* 107 Iowa, 85, 88, 89, 77 N. W. 530, it is held:

"It is also a well established rule that, when maintenance or use is a part of the condition, there must be such neglect to maintain as to indicate an intention not to comply, to constitute a breach of condition. *Osgood v. Abbott,* 58 Me. 73; *Mills v. Evansville Seminary,* 58 Wis. 135, 15 N. W. 133; *Rowe v. Minneapolis,* 49 Minn. 148, 51 N. W. 907; *Hurto v. Grant,* 90 Iowa, 414, 57 N. W. 899. In other

words, it must be shown that the spirit and purposes of the condition have been wilfully disregarded by the grantee, to establish such breach as will authorize a re-entry by the grantor. Jones, Real Prop. sec. 680, and cases cited."

In *Rose v. Hawley,* 141 N. Y. 366, 378, 36 N. E. 335, it is held:

"It is not enough to show in this way that the letter of the condition is violated, but it must appear that its true spirit and purpose have been wilfully disregarded by the grantee."

The foregoing citations contain the proper legal doctrine with respect to the issue involved herein. The question, therefore, to be determined is, first, whether there is evidence to indicate an abandonment of the property for park purposes, or, secondly, whether the spirit and purposes of the condition have been wilfully disregarded so as to establish a breach.

There is no evidence indicative of an abandonment. There is nothing to indicate that the *Association* does not consider the property in question a valuable acquisition for its general system of parks, or that it has failed to do what might be considered necessary to improve this property for park purposes, under the facts as they existed. It may be conceded that the *Association* did not expend as large a sum of money proportionately upon this park as it did upon the Madison city parks, and that the improvements made thereon were rather limited. Parks, however, are designed not solely to serve the purpose of show places, but are intended for the pleasure and recreation of the public, and, in a large measure, for the special benefit of that portion of the public who inhabit the territory in its immediate proximity. The object to be attained is to secure the greatest benefit to the greatest number, and unquestionably the *Association,* with its limited means, with that object in view, has directed its primary attention to the improvement and maintenance of those parks situated within the corporate limits of the city. The

deceased was a member of the *Association* at the time he drafted the will and up to the time of his death. It must be presumed that he had knowledge of the condition of the finances of the *Association*, and that to develop and maintain a system of public parks involved primarily the collection and acquirement of the necessary funds to carry out this purpose. There is nothing in the devise that is indicative of any expectation on the part of the testator for the *Association* to act otherwise than in accordance with its financial ability and its general obligation to the entire system of parks and pleasure drives. The evidence does not disclose on the part of the public at large a general demand for greater improvements during the period in which the park was held under the devise. It can also be said that, from observations made with respect to other parks, their development and completion in almost every instance have been the subject of years of effort. The accomplishment, as a rule, keeps pace with the general public demand.

With these thoughts in view, can it logically be said that the *Association* has been guilty of any act which would indicate either that it intended to or had abandoned the property for park purposes, or that it had wilfully breached the condition, assuming that such condition exists as a part of the devise? In the final analysis, the subject of a breach of a condition subsequent to a large extent depends upon the intentions of the devisor or grantor and of the devisee or donee, taken in connection with all the surrounding facts and circumstances in the case. During a large portion of the time during which this tract of land was held by the *Association* abnormal conditions existed in the country. Prior to our entry into the war for a period of three years, every effort was strained on the part of our citizenship to pursue productive industry, and during the war and subsequent to such period our resources were heavily taxed to

successfully maintain the war and to readjust economic conditions.

Taking into consideration all the surrounding facts and circumstances, we are thoroughly convinced that the nonsuit in the lower court was properly granted.

What has heretofore been said and held herein is upon the assumption that the eighth provision of the will created a condition subsequent. Whether such provision created such condition, or whether it operated to create a trust, it is not necessary for the court to decide; neither is it necessary to settle the contentions of the two defendants, each of whom claims the reversion in the event of a breach.

We therefore hold that the judgment of the lower court should be affirmed.

*By the Court.*—It is so ordered.