St. Clara College, Appellant, vs. City of Madison, Respondent.

*February 24—June 10, 1947.*

540

541

542

543

**544**

For the appellant there were briefs by *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *William Ryan.*

*Harold Hanson,* city attorney, and *William J. P. Aberg* of Madison, for the respondent.

BARLOW, J.   Appellant contends that respondent breached the contract by using Edgewood drive for purposes other than park and pleasure-drive purposes and failed to maintain fences as provided in said contract, thus vesting title in appellant after re-entry, which was made prior to the commencement of this action.   It now seeks to clear the record title and contends proof that its re-entry is rightful is all that is required.   While it is admitted that defendant may interpose such defense as it has, both legal and equitable, it is contended that this is not an action for forfeiture as equity has not enforced the forfeiture but has failed to relieve against it because no equitable relief from the grounds for forfeiture exists.   To sustain its position

appellant relies on *Maginnis v. Knickerbocker Ice Co.* (1901) 112 Wis. 385, 88 N. W. 300; *Oconto Co. v. Bacon* (1923), 181 Wis. 538, 195 N. W. 412.

In the *Knickerbocker Case, supra,* a strip of land was conveyed to the Knickerbocker Ice Company for railway right of way purposes with express conditions in the conveyance that the grantee was to construct fences and culverts, which conditions were never complied with, although they were demanded by the grantor. In the instant case the original conditions were complied with, including construction of the driveway, construction of the fences and gates, construction of the underground passageways; and all other conditions which entitled the grantee to a conveyance of Edgewood drive for park and driveway purposes, subject to the conditions subsequent, which were the maintenance of the fences, gates, and passageways. If the original conditions had not been complied with by the association it is possible that the right to the easement never would have attached, but where the conditions were complied with the right to the easement was established. It is undisputed that the conditions subsequent were complied with by the association and the city over a period of more than thirty years, or from 1904 until 1937. Whether they were complied with thereafter is the issue in this case, which requires an examination of the facts and the law applicable to them.

It is a general rule, too well established to need citations, that conditions subsequent in a deed will be construed most strongly against the grantor and forfeiture will not be enforced unless clearly established. "It is also a well-established rule that, when maintenance or use is a part of the condition, there must be such neglect to maintain as to indicate an intention not to comply, to constitute a breach of condition." *Burrows v. Madison Park & P. D. Asso.* (1922) 177 Wis. 639, 644, 189 N. W. 535; *Bonniwell v. Madison,* 107 Iowa, 85, 77 N. W. 530; *Osgood v. Abbott,* 58 Me. 73; *Mills v. Evansville Seminary* (1883), 58 Wis. 135, 15 N. W. 133; *Rowe v. Minne-*

*apolis,* 49 Minn. 148, 51 N. W. 907; *Hurto v. Grant,* 90 Iowa, 414, 57 N. W. 899; Jones, Real Property, sec. 680. It is said in *Rose v. Hawley,* 141 N. Y. 366, 378, 36 N. E. 335 :

"It is not enough to show in this way that the letter of the condition is violated, but it must appear that its true spirit and purpose have been wilfully disregarded by the grantee."

Thus we will examine the facts in the light of the foregoing rule.

Appellant contends that the driveway was resurfaced and placed in condition for general travel by the public, the same as other city streets, and that no action was taken by the city to restrict its use to park and driveway purposes. It is contended that the city should have passed an ordinance prohibiting trucks from traveling on the driveway and posted notices to this effect. Respondent denies that the driveway was resurfaced or black-topped. "Resurfacing" is a relative term and appellant is correct at least to the extent that the driveway was improved, and possibly to the extent that it was resurfaced. It is admitted that the driveway, as first constructed, was a graded dirt road and that later some cinders were added and eventually a small amount of gravel was put on the driveway, which was oiled, consisting of a seal coat, but the average seal coat did not exceed three fourths of an inch, and at some places much less, so as to carry a lighter character of traffic than the traffic on the driveways in Vilas park. Also salvage material from Monroe street was used to fill holes that were washed out on the lower side of the driveway. However, this does not mean that it was improved to the extent that it could be used for all types of vehicles such as other city streets. A seal coat of an average thickness of three fourths of an inch will not carry heavy traffic or heavy trucks. The improvement of the driveway was merely consistent with the change in the mode of travel from carriages to private automobiles which took place between the time the driveway was constructed and the improvement made. Thus the contention of appellant that the

improvement of this driveway was consistent with the improvement of city streets for general public travel is not sustained, and it cannot be said that any improvement was made inconsistent with the purpose for which the easement was granted so as to cause the land to revert.

The failure of the city to pass an ordinance prohibiting trucks to travel on this driveway is no indication that it invited or approved its use by heavy trucks.   The width of the driveway, the type of surfacing, the overhanging branches of the trees, and the trees in the driveway, all demonstrated to anyone that it was not constructed for truck travel and was not intended to be used for that purpose.   The evidence shows that a few people still persisted on driving trucks over it.   The city may well pass and enforce an ordinance prohibiting the use of trucks on the driveway.   Its failure to have passed such ordinance heretofore and the use of the driveway for purposes for which it was evidently not intended is no more a violation of the terms of the contract than it would be if persons used it for such purpose in violation of an ordinance.

Proof was offered by appellant that fences were not properly maintained for some period of time, and particularly between the years 1942 and 1945.   Proper repairs were made after the commencement of this action.   While it was the duty of the city to maintain these fences, it does not follow that failure and neglect on the part of its officers under the circumstances is sufficient to adjudicate a forfeiture.   During the greater portion of the period this country was engaged in war, and we recognize that it was difficult, if not impossible, to obtain material and labor to make the necessary repairs.   It is said in 18 C. J., Deeds, p. 368, sec. 389: "The grantee in a deed need only substantially comply with a condition subsequent."   And in *Mills v. Evansville Seminary* (1883), 58 Wis. 135, 140, 15 N. W. 133, it was said:

". . . courts do not hasten to seize upon mistake or neglect, or even misuser of property, to adjudge a forfeiture in cases of this nature."

In the above case property was conveyed as a site for a seminary building, and was to revert when not used for such purpose. Here the association, and later the city, took over a large tract of land, of which Edgewood drive was a part, and expended large sums of money in developing it as a park and driveway area. Large sums were expended each year for its maintenance, and the public was greatly benefited thereby. In *Burrows v. Madison Park & P. D. Asso.* (1922) 177 Wis. 639, 189 N. W. 535, where land was devised to the association in a will providing that it should revert in the event it was not used for park purposes, and the heirs sought to clear title by reason of the claimed failure of the association to use it for park purposes, the court held that the question was whether the evidence indicated an abandonment of the property for park purposes or whether the spirit and purpose of the condition had been wilfully disregarded so as to establish a breach. No claim is made in the instant case that there is any evidence to indicate the abandonment of Edgewood drive for park and driveway purposes. The mere failure to repair the fences during a war period cannot be said to be wilful disregard of the requirement that the fences be properly maintained and establish a breach of the condition so as to cause the land to revert.

While a grantor has a right to have conditions subsequent complied with, we must still examine the claimed breach in the light of the over-all purpose of the conveyance. It is common knowledge that fences must be repaired over a period of years, but under the purpose of this easement the failure and neglect to make such repairs must be sufficient to indicate abandonment of the property for the purposes of the easement or a wilful and deliberate disregard of the rights of the grantor under the conditions subsequent. We do not consider that either of the conditions exists here. The terms and conditions of the easement have been substantially complied with and the trial court properly dismissed plaintiff's complaint.

Respondent petitioned the court to review that part of the judgment dismissing its counterclaim. Claim is made that it

is entitled to judgment quieting title to Edgewood drive because its possession for approximately forty years has ripened into title by adverse possession, prescription, dedication, and implied grant.    We do not agree with this contention because the use of Edgewood drive by the association, and later the city of Madison, was by virtue of the contract of March 30, 1904.    Respondent came into possession of it under the terms of the contract and continued in possession by virtue thereof.

On review, respondent further contends that it is entitled to a deed from appellant pursuant to the terms of the contract of March 30, 1904, for which demand was made in its counterclaim.    Under the terms of the contract appellant agreed that when the association obtained title to the lands described in said contract, which is now Vilas park, for the purposes of a public park, and made expenditures in the improvement of the park in a sum of not less than $10,000, appellant would convey by deed a perpetual right of way or easement, for driveway purposes only, of the land described in the contract, herein known as Edgewood drive.    These conditions have been complied with, together with other conditions of the contract, consisting of the construction of a driveway, fences, gates, and underground passages.    Thus the association was entitled to a deed from appellant at the time the terms and conditions of the contract were complied with, and this respondent, as grantee of the association, is entitled to a deed from appellant in accordance with the terms and conditions of the contract entered into on March 30, 1904, between the appellant and the Madison Park & Pleasure Drive Association.

*By the Court.*—That portion of the judgment dismissing plaintiff's complaint is affirmed, and that portion of the judgment dismissing respondent's counterclaim is reversed, and cause remanded with directions to enter judgment thereon in accordance with this opinion.