GIESE and wife, Appellants, vs. HANNI and others, Respondents.

*October 13—November 8, 1955.*

For the appellants there was a brief by *George A. Hartman, Robert G. Hartman, Leo C. Hartman,* and *George A. Hartman, Jr.,* all of Juneau, and oral argument by *George A. Hartman, Jr.*

For the respondents there was a brief by *Thiel, Allan & Storck* of Mayville, and oral argument by *Robert E. Storck* and *John A. Thiel.*

BROWN, J. There is little conflict in the evidence but the parties differ respecting the conclusions to be drawn from it.

The trial court made the following findings of fact and conclusions of law:

## "Findings of Fact

"1. That on January 10, 1893, Frederick A. Quandt leased to the Rock Cheese Factory Company the following described piece of property, to wit: [Description by metes and bounds.]

"2. That said lease was given in consideration of the payment of one dollar and that the term in said lease was defined as follows: 'For and during the term so long as the premises is used for manufacturing cheese or butter and cream purposes, otherwise the premises herein described revert to Frederick A. Quandt or his heirs, executors, or assigns again.'

"3. That the Rock Cheese Factory Company erected on the leased premises a cheese factory and used the same continuously and appropriately until it assigned its lease to G. Hanni & Sons on or about March 1, 1953. That since March 1, 1953, the defendants G. Hanni & Sons have continuously used said premises for manufacturing cheese.

"I find as

## "Conclusions of Law

"1. That the lease covering the following described property to wit: [Description given] which lease was originally made on January 10, 1893, when Frederick A. Quandt leased same to the Rock Cheese Factory Company and which lease was assigned to G. Hanni & Sons Company on March 1, 1953, has never been terminated but is in full force and effect."

None of these are attacked except the finding and conclusion that since March 1, 1953, G. Hanni & Sons Company

have continuously used said premises for manufacturing cheese and the lease has never been terminated but is in full force and effect. Appellants submit that this finding is contrary to the great weight and clear preponderance of the evidence and the conclusion that the lease has not been terminated (by Hanni's failure to perform the condition) is error.

The evidence shows without any important variance that about March 1, 1953, Rock Cheese Factory Company assigned its lease to Hanni and sold Hanni its cheese factory and the personal property there for $7,500. Until about July 10, 1953, Hanni operated the Rock factory but from then until January, 1954, Hanni received no more milk and processed no more cheese there. The cheese-making equipment remained in the factory and Harold Hanni, son of G. Hanni, and employed by G. Hanni & Sons Company, occupied the living quarters in the factory. Beginning in January, 1954, and continuously thereafter, G. Hanni & Sons Company brought to the Rock factory cheeses whose manufacture had been started two or three days earlier in the company's other factory. They stayed in the Rock factory from eighteen to twenty-one days where, at intervals of two or three days, Harold Hanni rubbed them with salt water by hand and turned them over. This is the curing process and is a necessary part of the manufacture of cheeses. After the curing was completed, the cheeses were prepared for shipment in the Rock factory. This process turned out Stein cheese, a special variety which must be kept separate during its manufacture from other cheeses, because its bacteria flavors other kinds of cheese which come near it. G. Hanni & Sons Company uses the Rock factory exclusively for the production of Stein cheese, for which the factory is especially suitable.

The milk flow is very low, dropping down sharply about June 10th until the middle of August. The months of big flow begin in December and continue large until June. The

Ryser Company buys Hanni's entire output and during the summer and autumn of 1953 G. Hanni & Sons Company did not have any milk left for the manufacture of Stein cheese after filling orders of the Ryser Company for Gouda cheese.

In February, 1954, appellants served notice on G. Hanni & Sons Company to vacate the factory. Letters on the subject had been sent by appellants to Hanni earlier.

The question to be determined is whether the admitted suspension of cheese manufacturing in the Rock factory from July 10, 1953, to November at the earliest, or January, 1954, at the latest, works a termination of the lease under the provision that the term is for "so long as the premises is used for manufacturing cheese, . . . otherwise the premises herein described revert to Frederick A. Quandt, or his heirs, executors, or assigns again." We think it quite evident that not every cessation or suspension of manufacturing operations terminates a lease such as this. It is not within the contemplation of the parties that the tenant's investment is at the mercy of chance to the extent that it shall be lost if, for instance, his cheesemaker quits or is discharged and cannot immediately be replaced, or milk is temporarily unobtainable. The cessation must be for such a time or under such circumstances as to indicate the tenant's intention not to comply with the condition of user. We have held that a suspension of operations because of unfavorable, temporary conditions is not a breach of condition resulting in a reversion of the property where there is present the intention of the tenant or grantee to resume the specified use as soon as feasible and within a reasonable time. Thus, in the case of *Koonz v. Joint School Dist.* (1950), 256 Wis. 456, 458, 41 N. W. (2d) 616, the facts showed a conveyance of certain land for school purposes with a right reserved in the grantor " '. . . in the event that the said school district shall cease to use the said parcel of land for the purpose above named.' " The district built a schoolhouse on the property and conducted a school in it for some

thirty years. Then, for approximately five years, the district transported its scholars to the school of a near-by village and paid their tuition there. During this time the annual district school meetings were held in the building, the school equipment was kept there and the building was used for the storage of grain belonging to the son of the grantor. For a time the district advertised the building for sale but no sale took place. Each year the district obtained from the supposed owner of the reversionary interest a waiver of his rights. In holding that the premises did not revert to the grantor under these circumstances, we said:

"These facts clearly indicate that the school district had no intention of abandoning the local school. It was transporting the children until such time as they might again find it practicable to instruct the children locally. It is common knowledge that for a few years there may be very few children in a neighborhood and later on the juvenile population may be greatly increased. The district voted on a year-to-year basis whether to operate the school or to transport the pupils." (p. 461.)

"In *Mills v. Evansville Seminary* (1883), 58 Wis. 135, 143, 15 N. W. 133, the conveyance was given with a right of reversion if it ceased to be used for seminary purposes. It was so used for some time and a minority of the voters attending a meeting passed a resolution authorizing the selling of the land to a manufacturing concern. The land was later reconveyed to the seminary and reopened as a seminary. The court stated:

" 'True, they conveyed away the property, and did acts quite inconsistent with the due performance of their duty. But they have retraced their steps, and are now using the property for the purpose designated by the grantors. We have referred to the rule of law that these conditions are strictly construed so as to avoid a breach.' " (p. 462.)

In *St. Clara College v. Madison* (1947), 250 Wis. 538, 27 N. W. (2d) 745, also cited with approval in the *Koonz* matter, *supra,* there was a failure to maintain fences required

by a contract and the college attempted to enforce a reversion clause of the grant. In denying the reversion, we said:

"It is a general rule, too well established to need citations, that conditions subsequent in a deed will be construed most strongly against the grantor and forfeiture will not be enforced unless clearly established. 'It is also a well-established rule that, when maintenance or use is a part of the condition, there must be such neglect to maintain as to indicate an intention not to comply, to constitute a breach of condition.'" (p. 545.)

In the *Koonz* opinion, at page 461, we commented:

"In *St. Clara College v. Madison, supra,* the grantee was excused from doing required fencing because of war conditions which made it difficult, if not impossible, to obtain material and labor to make necessary repairs. Had it been willing to pay a premium, the grantee could have gotten materials and labor. In the present case, the school district could have maintained classes on the premises at a financial loss. Temporary conditions such as these tend to excuse strict compliance with the terms of a condition subsequent."

We consider that the facts and circumstances of the *Koonz* and *St. Clara College Cases, supra,* are fully as strong to support reversion as in the case at bar, yet reversion for breach of condition was denied. Appellants rely strongly on *Ludtke v. Compound School Dist.* (1944), 246 Wis. 235, 240, 16 N. W. (2d) 562, where a failure to teach school in the building was held to bring about a reversion to the lessor. The lease in that case contained a condition that "the said district shall keep a schoolhouse on the said land, and occupy the same by having a district school in said house two months in a year." For three years the district failed to conduct any school there. The definite requirement of keeping school for two months in each year was not met, which distinguishes that case from the one before us, in which no

time was set and, in which, under the authorities, we must determine how long and under what circumstances a suspension of operations manifests an intention not to comply with the condition.

We conclude that the trial court's finding that the premises have been used continuously for the manufacture of cheese, as that condition is contemplated by the lease, is not contrary to the great weight and clear preponderance of the evidence; and that its conclusion of law, that the lease has not been terminated, must be affirmed.

*By the Court.*—Judgment affirmed.