Simhawk Corporation, an Illinois Corporation, Appellee, v. John E. Egler, Appellant.

Gen. No. 64–18.

Second District.

November 5, 1964.

Reese and Schlueter, of Rockford (B. P. Reese, Jr., of counsel), for appellant.

Reno, Zahm, Folgate & Skolrood, of Rockford (Ralph S. Zahm and H. Emmett Folgate, of counsel), for appellee.

CARROLL, J.

This is a declaratory judgment action to declare the rights of the parties under a written lease.

On September 24, 1953 the defendant, John Egler, entered into a written lease with W. B. W. Building Corporation for certain retail store premises consisting of the first floor and basement space of a building at 1432 Myott Avenue in Rockford, Illinois. The term of the lease was five years and defendant went into possession on February 1, 1954. The lease provided for a minimum rental of $250 per month for the term and that tenant might make additional deposits

against the rent at any time he chose. It also contained the following provision for percentage rental:

"Tenant shall pay a total rental of five percent (5%) of the gross sales less credits and allowances for returned merchandise on his first seventy five (75) thousand dollars ($75,000.00) of sales annually, four percent (4%) on his next twenty five thousand dollars ($25,000.00) of net sales annually, and (2½%) two and one-half percent on the excess of his net sales over one hundred thousand dollars ($100,000.00) annually. Net sales is hereby defined to mean gross sales less allowances and credits for returned merchandise. The minimum rental above specified shall be credited against the percentage rental on or before the 15th day of the 2nd month of the lease and each succeeding month, tenant shall furnish landlord with a written statement of his net sales for the preceding month. Tenant shall pay the percentage rental within the first fifteen days of the following month and to determine whether there will be such a payment an amount thereof, the month's net sales shall be projected annually . . . A final adjustment of the total annual rental shall be made between landlord and tenant within fifteen (15) days after the closing of each year of the lease. Tenant shall make available to landlord an audit of his books and records made by a recognized public accountant or Certified Public Accountant at such times as may be appropriate for computing the final annual rent for each year of the lease and, in no event later than sixty (60) days after the end of each year."

The lease also contained the following provision:

"Tenant agrees that he will use the premises only for the purpose of a shoe store engaged in

the sale at retail of children's shoes and footwear."

On August 20, 1958, the defendant and W. B. W. Building Corporation executed an amendment and supplement to the lease extending the same to December 31, 1963 and providing for a reduction of the percentage on sales over $100,000 from 2½% to 1%. On January 4, 1962 W. B. W. Building Corporation sold the premises to Gene J. Hawker and Richard R. Simonovich who subsequently conveyed the same to Simhawk Corporation, the plaintiff in this action.

On October 1, 1962 the defendant discontinued operation of his retail shoe business in the leased premises and moved the same to his new building which was located two doors east of plaintiff's building. After October 1, 1962 defendant did not sell any shoes in plaintiff's store space. During the period from September 24, 1953 to October 1, 1962 defendant paid rent under his lease in the sum of $400 per month. This monthly payment included the minimum rent of $250. After moving to his new building, defendant sent plaintiff a statement of the rent account covering sales through the month of September, 1962, took credit for the rent paid at $400 per month, and tendered a check for $36.82 in full settlement of rent due plaintiff for the year 1962. This tender was refused. Thereafter defendants tendered a check each month for only the minimum rental of $250 per month. Plaintiff returned these checks contending that it was entitled percentage rent in addition to the minimum rent. The complaint prayed the court to declare that defendant is required to pay percentage rental in accordance with the terms and conditions expressed in the lease, and to order defendant to pay plaintiff such percentage rental from November 1, 1962 and to continue to pay the same until December 31, 1963. The complaint also contained an additional prayer that defend-

ant be ordered to pay all of plaintiff's costs, attorneys fees and expenses arising from the enforcement of the covenants of the lease. Upon a hearing the court found defendant to be indebted to plaintiff in the sum of $6,070.65 as accrued rental pursuant to the lease, and that there is due plaintiff the additional sum of $625 for attorneys fees and judgment for such sums was entered. Computation of the rent which the court found due plaintiff was made by applying the percentage formula to the reasonably expected net sales of defendant for the period from October 1, 1962 through December 31, 1963 as indicated by actual net sales made during the year 1962.

Defendant contends on this appeal that the written lease is complete in itself; that it contained no provision requiring the continued use of the leased premises by the lessee; that the trial court in reaching its decision implied a covenant of continued operation of defendant's business in the premises; and that the basis upon which such covenant was implied was the lease provision for a percentage rental.

That the lease in question contained an express provision requiring the continued use of the premises as a retail shoe store would appear to be beyond dispute. The language used is clear and unambiguous and when the lease is examined as a whole the purpose served by such covenant becomes apparent. In addition to the minimum rent of $250 per month the lease required defendant to pay percentage rental based on gross shoe sales from the store operating in plaintiff's building. If as defendant contends the lease did not require him to conduct a retail shoe store in the rented premises during the term of the lease, then computation of the percentage rental which defendant agreed to pay could not be made. The construction which defendant urges would nullify an essential part of the rental provisions of the lease and would

452

relieve the defendant of any obligation to pay more than the minimum rental. It is abundantly clear from the record that such was not the intention of the parties. The lease provides for payment of a total percentage rental "of 5% of the gross sales" and further provides that the minimum rental of $250 per month should be credited against the percentage rental; and that defendant could make "additional deposits against rent at any time that he chooses." It was pursuant to such provisions that defendant paid $400 per month, which represented the minimum rental plus an additional $150 to apply on the percentage rental. It is also significant that for a long period of time defendant paid $400 per month; and that after moving his store from the leased premises, defendant sent plaintiff a statement showing monthly net sales for the period from January to October 1, 1962. Defendant's action in furnishing such a statement can only be explained as full recognition on his part of the existing percentage rental provisions of the lease. Considering such plain lease provisions, together with defendant's conduct with respect thereto, we think there can be no doubt but that it was the intention of the parties to enter into a percentage lease. Defendant seeks to avoid the effect of the express terms of the lease which include his agreement to use plaintiff's premises only for a retail shoe store by arguing that the minimum rental of $250 per month represented a substantial return on plaintiff's investment, and that a requirement that defendant pay more than such minimum rental would be contrary to the terms of the lease.

In support of his theory, defendant sought to introduce evidence as to the value of the premises and as to the amount of the return plaintiff received on his investment. The trial court correctly ruled that such evidence was immaterial. A contrary ruling

could be justified only by holding that under the lease defendant had the option of paying either the minimum rental or a percentage of sales to be computed according to the formula set out in the lease. It seems obvious to us that if any such intention was in the minds of the parties, then some indication thereof would be found in the rental provisions of the lease. If we were to agree with defendant's argument that he did not breach the terms of the lease by ceasing operation of a shoe store in the premises, we would be substituting a rental payment clause entirely different than that to which the parties agreed. We are in accord with defendant's statement that the written lease is complete in itself. This being true, we are required to give meaning and effect to each clause thereof. The parties saw fit to include therein a provision that defendant in addition to the minimum rental would pay a percentage of the gross sale of shoes made in the shoe store conducted on plaintiff's premises. The source of the percentage rental was the shoe store and to insure its continued operation the lease specified that the defendant would use the premises only for such purpose. With the intention of the parties thus clearly expressed by the language of the lease, the trial court had no occasion to imply a covenant of continued operation.

In Fox v. Fox Valley Trotting Club, 8 Ill2d 571, 134 NE2d 806, the Supreme Court considered the effect of the lessee's abandonment of premises where he has agreed to use the same for the operation of a certain specified business. In that case the lease, which was for five years, provided that the premises "are to be used soley" for the staging of harness races at which pari-mutuel wagering is to occur, horse shows, rodeos, auctions, and the like. The stipulated rental was $25,000 per year, plus varying percentages in different years of gross receipts from the opera-

tion conducted on the premises. After staging racing meets on the premises for several years, the lessee abandoned plaintiff's track and transferred its meets to another track, and refused to pay the landlord any sum other than the base rent. The plaintiff brought suit for an accounting of monies due him under the lease. On appeal from an adverse decision of the trial court, plaintiff contended that it was clear from the lease itself that the parties intended that the premises were to be used for racing meets; that they had not been so used; and that therefore there was a clear breach of the express terms of the lease.

The Supreme Court agreed with the plaintiff's argument and reversed the case. Cited with approval in its opinion is Stoddard v. Illinois Improvement & Ballast Co., 275 Ill 199, 113 NE 913. In that case the lessor owned 480 acres of land. Ten acres were leased to the lessee for ten years for the purpose of quarrying stone. Lessee was to pay 6 cents per yard for stone quarried and lessor was to have the privilege of examining the lessee's books to verify the accounts rendered. The lessee failed to proceed with due diligence to develop said premises. Lessor brought suit to recover damages for failure of lessee to develop the premises for quarrying purposes contrary to the intent and meaning of the lease. Lessee contended that the terms of the lease did not explicitly require him to quarry stone. In rejecting such argument and affirming judgment for lessor, the court had this to say:

> "In ascertaining the meaning and intent of the lease we are to give meaning and effect to every clause therein, if possible, and from the whole, ascertain what is the real intent. It very clearly appears from the provisions of the lease that it is one given for the purpose of quarrying stone."

Application to the facts in the case at bar of the reasoning pursued in both Fox and Stoddard would appear to lead to the inescapable conclusion that the parties intended that plaintiff's premises were to be used only as a shoe store and failure to continue operation of such a store constituted a clear breach of the express terms of the lease.

We do not regard Fay v. Montgomery Ward & Co., 19 Ill App2d 302, 153 NE2d 421, relied upon by the defendant as applicable to the facts in the instant case for the reason that the lease involved did not contain any restrictive statement as to the purpose for which the premises should be used, and furthermore, there the lessee had not removed its entire business operation from the demised premises.

For the reasons herein indicated, the judgment of the Circuit Court of Winnebago County is affirmed.

Affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.