**AYRES JEWELRY CO., a partnership, Appellant (Defendant below),**

v.

**O & S BUILDING, a corporation, Appellee (Plaintiff below).**

**No. 3514.**

Supreme Court of Wyoming.

Nov. 1, 1966.

The important provisions of all the rental leases are similar, and those of the last lease are as follows:

"The said premises hereby leased to be used by Lessees for a jewelry shop, and for no other purpose whatsoever unless the written consent of the Lessor is first had and obtained thereto.

\*    \*    \*    \*    \*    \*

"Lessees hereby lease said property and premises from the Lessor upon the conditions and for the full period herein noted, and do hereby agree to pay to the Lessor the full sum of Eleven Thousand, Four Hundred Dollars ($11,400.00), together with the further considerations hereinafter specified as and for rent of said premises for said period, the said Eleven Thousand, Four Hundred Dollars payable in equal monthly installments of One Hundred Fifty Dollars ($150.00) each, in advance, one such installment to become due and payable between the first and fifth days of September 1958 and thereafter between the same days of each successive calendar month of said leasehold term.

\*    \*    \*    \*    \*    \*

"As a further consideration for the execution of this lease by the Lessor, it is hereby mutually agreed as follows, to-wit:—On or before the 9th day of January in each of the years 1959, 1960, 1961, 1962, 1963, 1964 and 1965, seven per cent (7%) of the total amount of the gross sales made by Lessees during the preceding calandar year shall be computed (by using the gross sales shown by Sales Tax Returns made by Lessees under the existing Sales Tax Laws of the State of Wyoming); and if such seven per cent (7%) exceeds the agreed sum of Eighteen Hundred Dollars rental above specified for each calendar year of this lease, the Lessees expressly agree to pay to the said Lessor in cash the amount by which such percentage exceeds said sum of Eighteen Hundred Dollars ($1,800.00)."

Defendant paid $3,509.59 for rental for the nine months January through September,

J. F. Mahoney, Casper, for appellant.

Fred W. Layman, Casper, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

Plaintiff below leased for store purposes a room in its building to defendant commencing on January 1, 1941, and by successive leases thereafter continued such leasing, upon substantially identical terms, up to and including December 31, 1964. However, defendant vacated the leased premises on or about September 30, 1963, and moved to a larger store location in the same business block and just a few doors to the west of plaintiff's building.

1963, and there is no dispute about the gross income for those nine months, or that the amount thus paid satisfied the agreed rental under the lease to and including September 30, 1963.

It also appears that the parties agreed that the defendant paid one hundred fifty dollars a month from October 1, 1963, through December 31, 1964, at which time the lease terminated.

Having paid the full 7 percent of gross sales for the years 1958, 1959, 1960, 1961, and 1962, and the full 7 percent of gross sales for the first nine months of 1963, as well as the $150 monthly payments for the months of October, 1963, through December, 1964, when the lease terminated, the defendant contended it had fully discharged its rental obligations under the terms of the lease.

The plaintiff, however, insisted that defendant breached its lease agreement by vacating the premises on September 30, 1963, continuing its jewelry shop business in another location a few doors to the west, and failing to pay plaintiff as rent for its premises an amount equal to 7 percent of its gross sales of the jewelry business conducted in its new location.

In giving judgment for the plaintiff, the court, apparently without objection from either party, took into consideration the agreed fact that defendant's new location had considerably more floor space than that in which it had conducted its jewelry shop in plaintiff's building and, consequently, allocated the gross sales business to be used as a basis for computing the 7 percent rental due plaintiff in the area proportion plaintiff's smaller facility bore to the larger, thus arriving at the precentage figure of 57.4 percent. As the stipulated gross sales of defendant for the disputed period of 15 months was $175,976.89, and 7 percent thereof was $12,318.38, the court arrived at $7,070.98 as being the 57.4 percent to which plaintiff was entitled as rent for the disputed period of 15 months. As the rental paid by defendant to plaintiff for that period was $2,250, that amount was

deducted from the $7,070.98, leaving a balance of $4,820.97 (sic) due plaintiff from defendant, and judgment was given plaintiff against defendant for that amount plus interest amounting to $337.46, a total judgment of $5,158.43 and costs. Defendant appeals.

Both by brief and argument, appellant seems to assume that the correctness of the trial court's decision rests upon there being an implied covenant in the lease requiring defendant to continue to conduct its jewelry shop in the leased premises.

The appellee seems to accept this as at least a major point of dispute, although appellee does not completely rest its defense of the court's judgment upon the contention that there is by implication such a covenant.

Appellant feels that § 34–2, W.S.1957, makes the lease in question a "conveyance" and therefore § 34–36, W.S.1957, expressly forestalls any implied covenant being read into the lease. Those sections are as follows:

Section 34–2:

"The term 'conveyance,' as used in this act, shall be construed to embrace every instrument in writing by which any estate or interest in real estate is created, alienated, mortgaged or assigned, or by which the title to any real estate may be affected in law or in equity, except wills, leases for a term not exceeding three years, executory contracts for the sale or purchase of lands, and certificates which show that the purchaser has paid the consideration and is entitled to a deed for the lands, and contain a promise or agreement to furnish said deed at some future time."

Section 34–36:

"No covenant shall be implied in any conveyance of real estate other than a conveyance of oil, gas or other minerals whether such conveyance contains special covenants or not."

In a memorandum opinion advising respective counsel of its conclusions the trial

court said there was little doubt the discontinuance of the business was a violation of the lease agreement, although admitting the possibility that its language did not clearly and in express terms bind the lessee to maintain the jewelry business in the leased premises for the lease term, but saying this was debatable and that if the covenant *must* be implied because the lease terms are not entirely clear there was sufficient basis and legal necessity for it. The trial judge also doubted that § 34–2, W.S.1957, was controlling because of the language in the lease and the necessity of construing that language in the light of the surrounding circumstances in order to ascertain and carry out the intention of the parties.

■ Notwithstanding the trial court's cautious noting of the "possibility" the language of the lease did not amount to an express covenant binding the defendant to maintain a jewelry business in the leased premises for the lease term, and that the matter was debatable, the court said precisely that the language used did not relieve defendant from the duty to so maintain the jewelery business at the premises owned by plaintiff. This of itself amounted to the court's interpretation of the meaning of the language of the lease's provisions as being an express convenant. With this interpretation we agree. The first provision of the lease which we have quoted serves to emphasize that the leased premises were to be used for a jewelry shop and for no other purpose whatsoever, unless the written consent of the lessor was first had and obtained. There was no such consent. To leave the premises vacant was not to use it as a jewelry shop.

Moreover, the agreed rental was not $150 per month. The rental was to be arrived at by a definite and certain method and formula. The unilateral action of the defendant destroying and eliminating one necessary and important element of the formula was a breach of the lease contract for which the defendant was answerable in money damages.

■ The way the court arrived at the measure of damages seems reasonable and in any event is not challenged so the award will not be disturbed.

Among the most persuasive authorities submitted by respective counsel is Simhawk Corporation v. Egler, 52 Ill.App.2d 449, 202 N.E.2d 49. Although that decision is from an intermediate appellate court, its factual situation is more nearly analagous to those present in the case now before us than others. In Simhawk the lease provided a minimum as well as a percentage rental and contained a provision that the lessee " 'will use the premises only for the purpose of a shoe store engaged in the sale at retail of children's shoes and footwear.' " 202 N.E.2d at 50. When the lessee abandoned the store before the end of the lease period and moved two doors away, tendering only the minimum rental, the lessor brought action for declaratory judgment, and the trial court found the lessor entitled to the percentage as additional rental. Upon the lessee's appeal that judgment was affirmed, the appellate court holding the lessee had breached the lease and was liable for the percentage rental; that to hold otherwise would be substituting a rental payment clause entirely different than that to which the parties agreed; that the court was required to give meaning and effect to each clause of the contract; that the source of the percentage rental was the shoe store; and that to insure its continued operation (as a shoe store) the lease had specified the lessee would use the premises only for that purpose. The opinion concluded by saying, 202 N.E.2d at 51, "With the intention of the parties thus clearly expressed by the language of the lease, the trial court had no occasion to imply a covenant of continued operation," and said the failure to continue operation of the premises as a shoe store breached the express terms of the lease.

Fox v. Fox Valley Trotting Club, 8 Ill. 2d 571, 134 N.E.2d 806, 807, cited in Simhawk as authority for its holding, was, however, decided by the Supreme Court of

Illinois, and, although its facts were considerably different from those of both Simhawk and the instant case, the legal points involved are the same. In Fox, the important words used in the lease were " 'to be used solely' for the staging of harness races, at which pari-mutuel wagering is to occur, horse shows, rodeos, auctions and the like." The rental was $25,000 per year plus varying percentages for different years of gross receipts from admission fees, total amount of stakes wagered on races, and receipts from concessions. The term was for five years with option to renew which was exercised in 1951, and the lease was increasingly profitable. Defendant neglected operations of plaintiff's premises and, in 1952, obtained a lease at a different location where its meets became highly successful, and defendant refused to pay plaintiff any sum other than the $25,000 as rent. Reversing a contrary decision of lower courts, the Illinois Supreme Court said, 134 N.E.2d at 808:

"We find validity in the arguments advanced by the plaintiff that recourse to antecedent, extrinsic, objective facts is not necessary; that it is clear from the terms of the lease itself that the parties intended that the premises 'are to be used' for the purposes of meets; that they have not been so used; therefore, there was a clear breach of the express terms of the lease. The language of the lease stripped of its meaningless verbiage so far as 'use' of the demised premises is concerned is, 'The said demised premises are to be occupied and used solely for purposes stated below.' In the provisions governing the 'use' of the premises the language of paragraph (a) is as follows: 'Conducting and operating harness racing meets (providing it is conducted and operated in conjunction with pari-mutuel wagering), the term harness racing to have the same meaning as designated by the Illinois Harness Racing Act, known as House Bill No. 142—approved July 17, 1945 [Ill.Rev.Stat.1953, c. 8, § 37s. et seq.]' "

So it appears the Illinois court construed the language of the lease as containing an *express* covenant that the premises be used for the specified purpose and none other.

■ Michigan, under a statute seemingly identical with our § 34–36, W.S.1957, has stressed the importance of the intention of the parties as it may be gleaned from the words and expressions used in leases and contracts and of the circumstances bearing upon and incident to them. A paramount purpose, from a lessor's standpoint, is said to be the amount of rent to be received, and when that amount is variable and conditioned upon the use to be made of the leased premises, words relating to the use intended are of primary importance and must be construed and interpreted to have been intended as an express covenant that the occupancy specified shall be continued during the entire lease period so as to provide a constant base upon which the agreed rent formula may be applied and the rent computed. See Milligan v. Haggerty, 296 Mich. 62, 295 N.W. 560, and Real Estate Stores v. Harris, 321 Mich. 632, 33 N.W.2d 97.

The evident and plain intention of the parties is that the lessor would receive for its store a rental computed upon the gross sales of a jewelry shop conducted therein. That intention furnishes unmistakable guideline justifying the interpretation of the words used in the leasehold as being an express covenant that the leased premises be continuously used during the lease period as and for the conduct of a jewelry shop.

In the case now decided we have followed the rule of law frequently applied heretofore by this court and in Arch Sellery, Inc. v. Simpson, 360 P.2d 911, 912, it was noted that we said in Barlow v. Makeeff, 74 Wyo. 171, 284 P.2d 1093:

" * * * in construing and determining a contract the intention of the parties

and the meaning are gathered primarily from the contents of the writing itself if it is not ambiguous. * * *"

We construe and interpret the clause of the lease contract above set forth and referred to herein as being a plain and unambiguous, express covenant of the defendant that it would maintain a jewelry business in the premises leased from the plaintiff for the full term of the lease and that to vacate the same was a breach of that express covenant.

The judgment of the trial court is affirmed.

Affirmed.