580 P.2d 776

**CHINA DOLL RESTAURANT, INC., an Arizona Corporation, Appellant,**

v.

**Seymour SCHWEIGER and Jimmie Komatsu, as Co-Trustees of the Komatsu-Okomato Trust dated February 12, 1969, Appellees.**

No. 1 CA–CIV 3752.

Court of Appeals of Arizona,
Division 1,
Department B.

June 6, 1978.

**316**

Biaett & Bahde by Kenneth Biaett, Phoenix, for appellant.

Sternberg, Sternberg & Rubin, Ltd. by Ronald I. Rubin, Tod Schleier, Phoenix, for appellees.

## OPINION

JACOBSON, Acting Presiding Judge.

This appeal involves a determination of the rights of parties under a percentage lease.

Appellees, Seymour Schweiger and Jimmie Komatsu, as co-trustees of the Komatsu-Okomato Trust (hereinafter referred to as lessors) brought an action against appellant, China Doll Restaurant, Inc., (lessee) seeking, among other relief: (1) an order terminating a lease existing between the parties, (2) damages and reasonable attorneys fees, and (3) damages for breach of an alleged oral agreement to mutually cancel a lease. The lessee answered and counterclaimed for damages allegedly suffered by reason of loss of profit for a new restaurant that lessees intended to conduct on the leased premises.

The lessors made two motions for partial summary judgment, one seeking to determine that lessee had breached the lease agreement and therefore lessors were entitled to terminate; the other seeking judgment on the lessee's counterclaim. On September 28, 1976, these motions were argued and the trial court granted the partial summary judgments. On September 30, 1976, lessee sought to amend its answer and counterclaim. A formal written judgment was filed which was objected to and lessee again requested the court to allow it to amend its answer and counterclaim, and objected to the court's failure to follow Rule 56(d), Arizona Rules of Civil Procedure. The court denied all of lessee's motions and on November 8, 1976, filed a formal written judgment containing the language of Rule 54(b), Arizona Rules of Civil Procedure.[1]

On November 30, 1976, lessors filed a motion to file a supplemental complaint and to join additional parties' defendants. The supplemental complaint contains the allegations of the original complaint and adds a count for malicious destruction of the leased premises which occurred after the filing of the original complaint. The additional parties' defendants are alleged to have performed the malicious destruction. Arguments on the motion to file the supplemental complaint were set for argument on January 14, 1977. On December 29, 1976, the lessee filed its notice of appeal, appealing from the granting of the partial summary judgments, the denial of its motion to amend its answer and counterclaim and the failure of the trial court to follow Rule 56(d), Arizona Rules of Civil Procedure.

On January 14, 1977, the trial court granted lessors the right to file the supplemental complaint and add additional parties' defendants. On January 31, 1977, lessee filed its answer and counterclaim to the supplemental complaint, which was in part the same amended answer that the trial court had previously refused to allow to be filed and the counterclaim was the same which the trial court had previously dismissed by its partial summary judgment. The trial court subsequently granted lessors' motion to strike a portion of the amended complaint and the counterclaim.

Before stating the facts in this case, it is necessary for the court to dispose of one procedural matter. The lessee in its opening brief questions the propriety of the trial court granting the lessors' motion to strike a portion of its answer and counterclaim directed to lessors' supplemental complaint. Since this action was not contained in the notice of appeal, and in fact occurred approximately two months after the notice of appeal was filed, we acquired no jurisdiction to determine this issue. Rule 73, Arizona Rules of Civil Procedure. *See, Rexing v. Rexing,* 11 Ariz.App. 285, 464 P.2d 356

---

1. The inclusion of Rule 54(b) language in the partial summary judgment made those judgments appealable.

(1970); *see also, Glenn v. Imperial Trust,* 114 Ariz. 239, 560 P.2d 423 (1977). We therefore do not determine the propriety of this action.

The facts necessary for a resolution of this matter are that in 1961, lessee and lessors' predecessor entered into a 15-year lease for property located near the southeast corner of Osborn Road and 7th Avenue in Phoenix, Arizona. By that lease, lessee agreed that it ". . . shall use said premises for conducting and operating therein a restaurant business . . . and for no other purposes without the prior written consent of the Lessor." The lease further provides for a minimum monthly rental of $600.00 and in addition an amount equal to 5% of the first $288,000.00 of lessee's gross sales. Thus, lessee's maximum annual rental liability was $14,400.00. In addition, the lease provides that "Lessee shall not use or permit said premises to be used for any purpose or purposes other than the purpose or purposes for which said premises are hereby leased." The lease also contained an option to renew for an additional five years, the rental for the additional term to be the subject of negotiation or arbitration.

Apparently, the original leased premises was simply a shell building and lessee installed all the interior fixtures necessary to conduct a restaurant business. On September 6, 1972, lessee began operating a Chinese restaurant called the "China Doll" upon the leased premises. The restaurant proved to be a success and with the exception of the first few months of operation, lessee paid the maximum annual rental of $14,400.00 until September 19, 1975.

In February, 1974, lessee leased larger facilities across the street from the leased premises with the intent to move the "China Doll Restaurant" to that new location. Following the leasing of the new premises, lessee notified lessor of its intention to move and to conduct a Mexican restaurant operation on the leased premises. Because the original term of the lease expired in 1977, and because remodeling was required if the Mexican restaurant was to be operated, the parties entered into prolonged negotiations for a new rental under the option to renew provision of the lease.

On September 19, 1975, lessee moved its Chinese restaurant operations to the new location. Since that date, the premises have not been used as a restaurant. However, the lessee continued to pay and the lessors accepted the minimum rental of $600.00 under the lease, until May, 1976, when lessee's rental check was returned. After the move, negotiations continued until lessors conveyed their final offer on the option rental to Robert Ong, president of the lessee. At that point, Ong indicated he was getting out. Lessors then requested permission to show the premises to other parties and Ong agreed. Lessors thereafter requested and received a key to show the premises to prospective tenants and subsequently reached an agreement to lease the premises to Ying Tang. However, apparently a dispute arose between lessors, lessee and Tang as to what fixtures were to remain on the premises. In any event, on April 21, 1976, lessee's attorneys advised lessors that it intended to go ahead with its plans for a Mexican restaurant, that it was exercising its option and desired to have the matter of rent fixed by arbitration as provided in the lease. On the same date, the lessors' attorney wrote lessee, advising that lessee had breached the lease agreement and the oral agreement to mutually cancel the lease.

On June 17, 1976, the lessee was advised that the lease was terminated as of May 7, 1976 and lessors returned to lessee the minimum rental check submitted by the lessee for the month of June, 1976. This litigation ensued.

## BREACH OF LEASE

Lessors' basic legal contention is that where the terms of the lease provide that the premises be used for a specific purpose at a minimum rental plus a percentage of the gross sales of the specified business conducted on the premises, the failure of the lessee to operate the specified business on the premises constitutes a breach of the

lease. The lessors further contend that there is no material dispute as to the fact that lessees ceased to do business on the leased premises and therefore they were entitled as a matter of law to a determination that the lease had been breached.

Lessee on the other hand disputes the basic principle of law involved and further contends that there are material issues of disputed fact concerning: (1) whether its ceasing to do business on the premises was only temporary, which even under lessors' principles of law does not constitute a breach; and (2) whether the acceptance by lessors of the minimum rental constitutes a waiver of the breach.

■ We agree with lessors that where a percentage lease specifies that the leased premises shall be used for a specific business and no other, the failure of the lessee to conduct that specified business on the premises constitutes a breach of the lease. This view is supported by the case of *Simhawk Corp. v. Egler*, 52 Ill.App.2d 449, 202 N.E.2d 49 (1964). In that case, the court, in construing a percentage lease, and the right of the lessee to cease operating a specified business on the premises with the payment of the minimum rental only, noted:

"That the lease in question contained an express provision requiring the continued use of the premises as a retail shoe store would appear to be beyond dispute. The language used is clear and unambiguous and when the lease is examined as a whole the purpose served by such covenant becomes apparent. In addition to the minimum rent of $250.00 per month the lease required defendant [lessee] to pay percentage rental based on gross shoe sales from the store operating in plaintiff's building. If as defendant contends the lease did not require him to conduct a retail shoe store in the rented premises during the term of the lease, then computation of the percentage rental which defendant agreed to pay could not be made. The construction which defendant urges would nullify an essential part of the rental provisions of the lease and would relieve the defendant of any obligation to pay more than the minimum rental." 52 Ill.App.2d at 452–53, 202 N.E.2d at 50–51.

\* \* \* \* \* \*

"Application to the facts in the case at bar of the reasoning pursued in both *Fox* [*Fox v. Fox Valley Trotting Club*, 8 Ill.2d 571, 134 N.E.2d 806 (1956)] and *Stoddard* [*Stoddard v. Illinois Improvement and Ballast Co.*, 275 Ill. 199, 113 N.E. 913 (1916)] would appear to lead to the inescapable conclusion that the parties intended that plaintiff's premises were to be used only as a shoe store and failure to continue operation of such a store constituted a clear breach of the express terms of the lease." 52 Ill.App.2d at 456, 202 N.E.2d at 52.

The same result was reached in *Ayres Jewelry Co. v. O. & S. Building*, 419 P.2d 628 (Wyo.1966) which held:

"The first provision of the lease which we have quoted ['The said premises hereby leased to be used by Lessees for a jewelry shop, and no other purpose whatsoever . . . .'] serves to emphasize that the leased premises were to be used for a jewelry shop and for no other purpose whatsoever, unless the written consent of the lessor was first had and obtained. There was no such consent. To leave the premises vacant was not to use it as a jewelry shop.

"Moreover, the agreed rental was not $150 per month. The rental was to be arrived at by a definite and certain method and formula. The unilateral action of the defendant destroying and eliminating one necessary and important element of the formula was a breach of the lease contract for which the defendant was answerable in money damages." 419 P.2d at 631.

■ Here the lessee specifically covenanted that it would use the leased premises for "conducting and operating a restaurant business . . . and for no other purpose . . . ." In addition, it agreed to pay as rental a certain percentage of the gross sales of that business. Based upon the foregoing authority and the specific

terms of this lease, we have no hesitancy in holding that if the lessee permanently ceased to conduct a restaurant business on the premises, thereby depriving the lessors of its right to receive their contracted rentals, a breach of the lease occurred, justifying lessors terminating the lease. The cases[2] cited by the lessee which appear to question this applicable principle of law are distinguishable as to the terms of the lease involved, or the relief sought.

The lessee nevertheless contends that the facts before the trial court could be interpreted that its ceasing to conduct a business on the premises was only temporary in nature. In this regard, it argues that upon opening a Chinese restaurant at the new location it intended to convert the demised premises into a Mexican restaurant, and that because of delays occasioned by negotiations over the rental for the renewal term and disputes with a new tenant, this intention was thwarted but is still present. We agree that the question of lessee's intent raises a disputed issue of fact. The question then becomes whether a temporary cessation of usage would operate to breach the lease.

In our opinion it does not. It is not every cessation or suspension of restaurant operations that would cause a breach of this lease. *See, Giese v. Hanni*, 271 Wis. 184, 72 N.W.2d 752 (1955). For example, if a fire occurred on the premises and the business was closed for remodeling, we do not believe such a cessation of business would result in a breach of the user conditions of the lease. Rather, "the cessation must be for such time or under such circumstances as to indicate the tenant's intention not to comply with the condition of user." *Giese v. Hanni, supra,* 271 Wis. at 187, 72 N.W.2d at 753.

■ In our opinion, a disputed issue of fact exists as to whether the lessee intended by its actions to not comply with the conditions of usage. For this reason, summary judgment was improper as to the right of

lessors to terminate this lease for lessee's alleged breach.

On remand of this matter, the trial court may properly consider the actions of the parties including the lessors' acceptance of minimum rental payments after China Doll Restaurant moved to a new location in determining whether the cessation of operations was only temporary in nature and whether there was an abandonment of the lease.

Since we reverse as to partial summary judgment granted in lessors' favor on the right to terminate the lease, we do not reach the other matters raised by lessee as to that issue.

## COUNTERCLAIM

In addition to granting summary judgment on lessors' right to terminate the lease, the trial court also granted summary judgment in lessors' favor on lessee's counterclaim seeking damages for lost profits for the Mexican restaurant it intended to operate on the demised premises. In this regard, the trial court acted correctly.

■ It is the general rule that loss of profits growing out of a breach of contract and resulting to an unestablished business, is of too uncertain a character to constitute a basis for the computation of damages for the breach. *Kettering Mercantile Co. v. Sheppard*, 19 N.M. 330, 142 P. 1128 (1914); *see also, Hughes v. Hobson*, 92 Nev. 683, 558 P.2d 543 (1976); *Knier v. Azores Const. Co.*, 78 Nev. 20, 368 P.2d 673 (1962); *Handley v. Guasco*, 165 Cal.App.2d 703, 332 P.2d 354 (1958).

■ Lessee seeks to avoid the application of this rule by pointing out that it had been in the restaurant business for many years and therefore the operation of a Mexican restaurant would not be a "new" business to it. We disagree. While lessee has operated a Chinese restaurant, its president admitted he had never been in the Mexican

**2.** *See, Percoff v. Solomon*, 259 Ala. 482, 67 So.2d 31 (1953); *Food Fair Stores, Inc. v. Blumberg*, 234 Md. 521, 200 A.2d 166 (1964);

*Stop & Shop, Inc. v. Ganem*, 347 Mass. 697, 200 N.E.2d 248 (1964).

food business or operated a Mexican restaurant. The fact that lessee has been successful in the Chinese food business, does not necessarily mean it will enjoy similar success in the Mexican food business, so as to avoid the application of the new business loss of profit rule.

The judgment in favor of lessors' on lessee's counterclaim is affirmed. The judgment in favor of lessors on its right to terminate the lease is reversed and remanded for further proceedings consistent with this opinion.

OGG and WREN, JJ., concur.