952 P.2d 325

**AHWATUKEE CUSTOM ESTATES MANAGEMENT ASSOCIATION, INC., an Arizona non-profit corporation, Plaintiff–Appellee,**

v.

**Daniel G. BACH, a single man, Defendant–Appellant.**

No. 1 CA–CV 96–0573.

Court of Appeals of Arizona, Division 1, Department E.

Oct. 2, 1997.

As Amended Oct. 6, 1997.

Review Granted March 17, 1998.

---

Bryan Cave LLP by Christine M. Regas, Phoenix, for Plaintiff–Appellee.

Cheifetz & Iannitelli, P.C. by Claudio E. Iannitelli, Phoenix, for Defendant–Appellant.

## OPINION

LANKFORD, Judge.

Daniel Bach ("Bach") appeals from the permanent injunction and judgment entered in favor of the Ahwatukee Custom Estates Management Association, Inc. ("ACEMA"). For the reasons discussed below, we affirm the judgment against Bach on the property issue, as well as the award of non-taxable costs to ACEMA.

At the time of the trial court proceedings, Bach owned two lots in Ahwatukee Custom Estates–8. Both properties are subject to the ACEMA Declaration of Covenants, Conditions and Restrictions ("CC & Rs"). In January 1995, the ACEMA Property Manager discovered that Bach had built perimeter fences on each property that exceeded eleven feet in height. The CC & Rs limit the height of such fences to six feet. Additionally, Bach built the fences and brick pilasters on one of the properties without first obtaining approval from the ACEMA as required by the CC & Rs.

Between February and June 1995, ACEMA made five requests to Bach to submit the plans and specifications for the disputed improvements to the ACEMA Board for possible retroactive approval. On July 12, 1995, Bach submitted plans to ACEMA that did not provide sufficient detail, such as the height of the fence walls. The parties were unable to resolve the dispute and ACEMA filed this lawsuit against Bach seeking injunctive relief requiring him to bring his properties into compliance with the CC & Rs. Bach counterclaimed, arguing that ACEMA had arbitrarily failed to adequately consider and approve the improvements.

In December 1995, the court held a consolidated preliminary and permanent injunction hearing and trial on the merits. At this proceeding, the parties agreed to resubmit the issues to the ACEMA Board for reconsideration. Pursuant to this stipulation, the trial court issued an order: (1) resetting the trial for February 9, 1996; (2) requiring Bach to submit the as-built plans of the fence and pilasters to ACEMA by December 29, 1995; (3) requiring the ACEMA Board to schedule an on-site inspection of Bach's property by January 6, 1996; and (4) requiring the Board to consider Bach's request for a variance on January 6, 1996. The order stated that a "willful failure to comply with any provision by any party will result in a citation for contempt." The order did not specify a deadline for ACEMA's written decision to Bach.

Bach submitted the documentation as required, and ACEMA inspected his property on January 6, 1996. On February 2, 1996, ACEMA informed Bach that it was granting some of his requested variances, but requiring him to remove the pilasters and decrease the height of certain parts of the fence.

The case proceeded to a bench trial. Because of time constraints, the parties submit-

ted written closing argument memoranda. In Bach's memorandum, he argued for the first time that the CC & Rs required ACEMA to issue a decision on his requested improvements within thirty days from the date of his submission of the plans, and that ACEMA's failure to do so resulted in mandatory approval of the improvements.[1] Bach relies on Article II, paragraph 7 of the CC & Rs, the provision governing a homeowner's submission of plans to the ACEMA Board for approval.

The trial court ruled in ACEMA's favor on the fence height issue, and in Bach's favor on the pilaster issue. The court's ruling did not specifically address Bach's argument that his plans were "deemed approved" by the ACEMA's late ruling.

Thereafter, ACEMA moved for its attorney's fees and costs as the prevailing party in an action arising out of contract, relying on both a provision in the CC & Rs and Arizona Revised Statutes Annotated ("A.R.S.") section 12–341.01(A). Bach objected to that request, particularly to ACEMA's request for non-taxable costs, arguing that they were not recoverable under either the CC & Rs or the statute.[2] The trial court granted ACEMA's motion and awarded it fees and costs, including $1,813.27 in non-taxable costs, and entered judgment in its favor. Bach filed this appeal. We have jurisdiction pursuant to A.R.S. section 12–2101(B).

We address the following issues on appeal:

1. Were the improvements deemed approved when ACEMA failed to give written disapproval within thirty days after Bach's submission of his plans?

2. Did the trial court err in awarding non-taxable costs to ACEMA?

## I.

We first address Bach's argument that the CC & Rs required ACEMA to issue a decision on his requested improvements within thirty days from the date of his submission of the plans, and that ACEMA's failure to do so resulted in mandatory retroactive approval of his improvements. In support of this argument, he relies on Article II, paragraph 7 of the CC & Rs, which provides in pertinent part:

> The Board shall have wide discretion in approving or disapproving plans and specifications to aid and promote the harmonious development and maintenance of the Custom Estates for the benefit of Developer and all lot owners.
>
> . . . .
>
> In the event the Board does not give written disapproval within thirty (30) days after plans and specifications have been submitted to it at its business address the said plans and specifications shall be deemed approved and this restriction satisfied.

We disagree with Bach's contention for several reasons.

■ First, Bach did not timely raise this issue and therefore waived its review. ACEMA issued its decision on the improvements on February 2, 1996. Bach did not challenge the timeliness of ACEMA's decision until he filed his closing argument memorandum on June 17, 1996, *after* the close of the trial. The parties filed contemporaneous closing argument memoranda,[3] and ACEMA never had an opportunity to address this issue.

Because Bach did not diligently pursue this argument and forced ACEMA to incur the expense of a trial which he now effectively claims was unnecessary, and because he failed to provide ACEMA with an opportuni-

---

1. Pursuant to the court's order, Bach submitted his plans and specifications for the fences and pilasters on December 29, 1995. Therefore, he argues that the CC & RS required the ACEMA Board to issue its decision by January 28, 1996. The Board did not issue its decision until February 2, 1996—thirty-five days after Bach submitted his plans and specifications.

2. ACEMA's affidavit in support of its application for fees and costs included in its "non-taxable costs" the following items: delivery and messen-

ger service charges, copying expenses, telecopier/fax charges, postage, long distance telephone charges, transcript fees and local delivery charges. Transcript preparation charges are recoverable as taxable costs. A.R.S. § 12–332. Accordingly, the award of this item as "non-taxable" was harmless error at worst.

3. ACEMA filed its closing argument memorandum/post-trial brief one day after Bach, on June 18, 1996.

ty to respond to this argument in the lower court, it would have been inequitable for the trial court to have ruled in his favor on this issue. *See, e.g., Payne v. Payne,* 12 Ariz. App. 434, 435, 471 P.2d 319, 320 (1970) ("[A] party must timely present his legal theories to the trial court so as to give the trial court an opportunity to rule properly[;] ... a matter raised for the first time on appeal will not be considered.").

Bach, not ACEMA, first breached the CC & Rs by failing to submit plans for the improvements to ACEMA for approval prior to their construction as required by the CC & Rs, and by building fences which violated the height limitation set forth in the CC & Rs. He also initially failed to submit his plans for the improvements for retroactive approval post-construction despite repeated requests by ACEMA, and the plans he finally submitted to ACEMA failed to provide sufficient detail. In light of Bach's continual disregard of the CC & Rs, we are unpersuaded by his argument that ACEMA's non-compliance deems his improvements approved.

■ In addition, Article II, paragraph 7 of the CC & Rs does not apply. Bach did not submit his plans to ACEMA through the ordinary pre-construction approval process. Rather, he submitted the plans post-construction in accord with the trial court's order. Although the court's order set forth various deadlines for both parties, it did not require the ACEMA Board to issue its decision regarding the improvements by any set date. The court's order, not the CC & Rs, governed the plan approval at issue, and the Board did not violate any provision of that order by issuing its decision thirty-five days after Bach's submission of the plans.[4]

Moreover, the approval deadline required by the CC & Rs serves no purpose here. Ordinarily, homeowners need a prompt response from the ACEMA Board regarding proposed improvements to move forward with their construction plans. If the Board is dilatory in addressing a construction request, homeowners should be able to proceed with their construction plans in reliance on the Board's lack of objection. That concern was not present here: Bach had completed the improvements long before seeking approval from ACEMA. He was unaffected by the five-day delay in the Board's decision.

## II.

■ ACEMA sought its attorney's fees and costs below, relying on A.R.S. section 12–341 (costs), A.R.S. section 12–341.01(A) (attorney's fees), and Article IX, paragraph 7 of the CC & Rs (providing for recovery of both fees and costs by successful party in litigation). The trial court awarded ACEMA its fees and costs, including $1,813.27 in litigation expenses, which the court designated "non-taxable costs." Bach challenges this award. The issue of whether the trial court has discretion to award non-taxable costs is a legal question which we review *de novo. See Roddy v. County of Maricopa,* 184 Ariz. 625, 626, 911 P.2d 631, 632 (App.1996).

■ We first consider whether these expenses can be recovered as costs under A.R.S. section 12–341 or as attorney's fees under section 12–341.01(A). "Unless provided for by statute, expenditures made by the parties in civil proceedings are not recoverable as costs." *Sweis v. Chatwin,* 120 Ariz. 249, 251, 585 P.2d 269, 271 (App.1978). However, courts have held that statutory authorization of reasonable attorneys' fees was intended to include litigation expenses. *E.g., Wheeler v. Durham City Bd. of Educ.,* 585 F.2d 618, 623–24 (4th Cir.1978) ("[F]ederal courts have routinely provided for recovery of out-of-pocket expenses in conjunction with fee awards."). These expenses include costs that are integrally related to the work of the attorney such as copying, telephone costs and necessary travel. *Id.*

Division Two of this Court addressed this issue in *CenTrust Mortgage Corp. v. PMI Mortgage Ins.,* 166 Ariz. 50, 58–59, 800 P.2d 37, 45–46 (App.1990). *CenTrust* held that services such as investigative and messenger services, telephone calls, travel expenses and document binding costs are not recoverable

---

4. Had ACEMA violated the court's order, the order provided that the remedy was a citation for contempt, not automatic approval of the plans. Bach never pursued an action for contempt against ACEMA.

expenses under A.R.S. section 12–341.01(A) because they are "not legal services performed under the supervision of an attorney." *Id.* We disagree. If these expenses are incurred in direct connection with the provision of legal services and are passed on to the client as part of the attorneys' bill, they can be considered to be part of "attorneys' fees."

Any other conclusion would subvert the compensatory purposes of the statute and of fee award contract provisions. The statute provides: "The award of reasonable attorneys' fees ... should be made to mitigate the burden of the expense of litigation to establish a just claim or defense." A.R.S. § 12–341.01(B). *See Nationwide Mutual Ins. Co. v. Granillo,* 117 Ariz. 389, 395, 573 P.2d 80, 86 (App.1977); *cf. Continental Townhouses East v. Brockbank,* 152 Ariz. 537, 733 P.2d 1120 (App.1986) (legal assistant services are included in attorneys' fees); *A.M.E., Inc. v. Azstar Casualty Co.,* 189 Ariz. 27, 938 P.2d 76 (App.1996) (computerized legal research charges are recoverable as attorney's fees). The only other approach is to treat such costs as part of overhead, included in the hourly rate, making fair allocation of these costs impossible. *See Continental Townhouses,* 152 Ariz. at 544–45, 733 P.2d at 1127–28; *A.M.E.,* 189 Ariz. at 27–29, 938 P.2d at 76–78. We therefore hold that the expenses are recoverable as part of attorneys' fees under the statute.

We next consider whether the expenses are recoverable under a contract provision for the award of attorneys' fees. Article IX, paragraph 7 of the CC & Rs provides for an award of attorneys' fees and "any additional relief ... ordered by the court" to the prevailing party in an action to enforce the CC & Rs.[5] The evident purpose of this provision is, like the statute, compensatory. The record contains evidence that ACEMA's attorneys' bills included these expenses. We note that attorneys generally pass on such charges to clients as separate items in their bills for services, and do not often simply absorb these costs and pass them on in the form of higher hourly rates. The purpose of the contract, ACEMA's evidence, and the common understanding of "attorneys' fees" all support the trial court's award of these expenses as part of attorneys' fees.

### III.

In sum, we affirm the injunction and judgment in favor of ACEMA and against Bach on the fence improvement issue. We also affirm the award of fees and costs to ACEMA.

Both parties seek an award of attorneys' fees and costs on appeal. Because ACEMA has prevailed on appeal, we grant its request, subject to its compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure and *China Doll Restaurant, Inc. v. Schweiger,* 119 Ariz. 315, 580 P.2d 776 (App.1978).

THOMPSON, P.J., and PATTERSON, J., concur.

---

5. It states in pertinent part:
   7. *Enforcement.* ABM, ACEMA, or any owner shall have the right to enforce, by any proceeding at law or in equity, all restrictions, covenants, conditions, reservations, liens and charges now or hereafter imposed by the provisions of this Declaration. . . . In the event legal action is filed hereunder, the non-prevailing party shall pay the prevailing party's reasonable attorneys' fees incurred in addition to any relief or judgment ordered by the Court.

