ATLANTIC AND EAST CAROLINA RY. CO. v. SOUTHERN OUTDOOR ADVER.

[129 N.C. App. 612 (1998)]

ATLANTIC AND EAST CAROLINA RAILWAY COMPANY, PLAINTIFF v. SOUTHERN OUTDOOR ADVERTISING, INC., AND WHEATLY OIL CO., INC., DEFENDANTS

No. COA97-1086

(Filed 2 June 1998)

**1. Landlord and Tenant § 48 (NCI4th)— sublease renewal— mailing of written notice**

Plaintiff sublessor failed to show that defendant sublessee did not provide written notice of its intent to renew the sublease within 90 days prior to expiration of the preceding term as required by the sublease where an employee of the sublessee testified that she recalled typing the letter renewing the sublease and placing it in the mailbox and that the presence of a copy of the letter in her office file indicated that it had been mailed, and although employees of the sublessor testified that they did not recall seeing or receiving the letter, they could not positively state that they did not receive it.

**2. Landlord and Tenant § 48 (NCI4th)— sublease renewal— contamination notice not required**

A sublessee did not violate terms of a sublease by failing to furnish to the sublessor a written certification regarding contamination before it renewed the sublease when the sublessee knew that the State contended that a condition of contamination existed on the property since the sublessee was required to furnish a written certification of contamination only after vacating the property upon completion of the entire sublease up to its 30-year limit and not after each five-year renewal period.

**3. Actions and Proceedings § 10 (NCI4th)— issue not alleged—ruling on moot issue**

The trial court improperly ruled on a moot question when it addressed an issue that plaintiff had not raised in the pleadings and plaintiff did not move to amend its pleadings to allege the issue.

Appeal by plaintiff from order entered 3 April 1997 by Judge W. Russell Duke, Jr., in Carteret County Superior Court. Heard in the Court of Appeals 22 April 1998.

ATLANTIC AND EAST CAROLINA RY. CO. v. SOUTHERN OUTDOOR ADVER.

[129 N.C. App. 612 (1998)]

*Sumrell, Sugg, Carmichael & Ashton, P.A., by James R. Sugg and Rudolph A. Ashton, III, for plaintiff appellant.*

*Wheatly, Wheatly, Nobles & Weeks, P.A., by C. R. Wheatly, III, for defendant appellee Wheatly Oil Co., Inc.*

*Harris, Shields, Creech and Ward, P.A., by Robert S. Shields, Jr., and Charles E. Simpson, Jr., for defendant appellee Southern Outdoor Advertising, Inc.*

HORTON, Judge.

On 30 August 1939, the North Carolina Railroad Company, as lessor, and plaintiff Atlantic and East Carolina Railway Company (Atlantic), as lessee, entered into a lease for certain properties including a tract located at 2600 Arendell Street in Morehead City. On 7 January 1985, Atlantic, as sublessor, entered into a sublease with defendant Southern Outdoor Advertising, Inc. (Southern). The habendum clause of the sublease stated the following:

> TO HAVE AND TO HOLD said leased premises unto Lessee for a term of FIVE YEARS (hereinafter called "primary term"), beginning as of the 15th day of November 1984, TOGETHER with the right to renew this lease for five successive terms of FIVE (5) YEARS each (hereinafter called "renewed terms"), beginning as of the expiration of the preceding term upon the same terms and conditions, except that rental shall be determined as hereinafter stated; provided Lessee, shall give Lessor a written notice of its election to renew this lease at least NINETY (90) DAYS prior to the date of expiration of the preceding term . . . .

Thus, according to the terms of the sublease, the sublease could be extended by the parties until 14 November 2014.

On 15 November 1984, Southern subleased the subject property to defendant Wheatly Oil Company, Inc. (Wheatly). Wheatly, the current tenant of the property, erected a convenience store and installed underground storage tanks on the property. Southern renewed its sublease with Atlantic for a second five-year period in November of 1989, and continued to pay rent annually until the fall of 1994 when the present dispute arose among the parties.

On 15 September 1995, Atlantic filed this action against both Southern and Wheatly (collectively "defendants") alleging a cause of action for summary ejectment based on Southern's failure to timely

ATLANTIC AND EAST CAROLINA RY. CO. v. SOUTHERN OUTDOOR ADVER.

[129 N.C. App. 612 (1998)]

renew its sublease with Atlantic for another five-year term in 1994, and failure to follow certain provisions in the sublease regarding contamination of the property by petroleum products. Atlantic also alleged a cause of action requesting reasonable compensation for the occupation of the property from November of 1994 through August of 1995. Southern subsequently filed a motion for summary judgment and the parties stipulated that Wheatly adopted the motion. Atlantic also filed a motion for summary judgment. The trial court thereafter entered an order making findings of fact and granting defendants' motion for summary judgment. The trial court also dismissed Atlantic's complaint with prejudice.

On appeal, Atlantic contends the trial court erred by granting defendants' motion for summary judgment and by denying its motion for summary judgment. Atlantic claims that Southern breached its sublease with Atlantic in several respects, and that as a result, Atlantic is entitled to immediate possession of the property. First, Atlantic claims that Southern failed to timely renew the sublease in 1994, and, therefore, that the sublease terminated as of 14 November 1994. Second, Atlantic claims Southern violated paragraph 16 of the sublease rider by failing to furnish Atlantic with written certification regarding contamination of the property prior to 14 November 1994, the date of the expiration of the first renewal term, when defendants knew the State of North Carolina contended a condition of contamination existed on the property. Finally, Atlantic claims that Southern violated paragraph six of the sublease rider by failing to furnish Atlantic with a written report detailing all releases, as defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980, Pub. L. No. 96-510, 94 Stat. 2808 (1980), required to be reported to federal, state, or local authorities in accordance with relevant regulations. In the alternative, Atlantic contends that if the trial court did not err by denying its motion for summary judgment, then issues of fact exist which would preclude the entry of summary judgment for defendants.

The party moving for summary judgment has the burden of establishing the lack of any triable issue of fact. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). The papers of the moving party are carefully scrutinized, and all inferences drawn from the evidence must be resolved in favor of the non-moving party. *Id.* While summary judgment is improper if findings of fact are necessary to resolve an issue as to a material fact, " 'such findings and conclusions do not render a summary judgment void or

ATLANTIC AND EAST CAROLINA RY. CO. v. SOUTHERN OUTDOOR ADVER.

[129 N.C. App. 612 (1998)]

voidable and may be helpful, if the facts are not at issue and support the judgment.' " *PMB, Inc. v. Rosenfeld*, 48 N.C. App. 736, 737, 269 S.E.2d 748, 749-50 (1980) (citation omitted), *disc. review denied*, 301 N.C. 722, 274 S.E.2d 231 (1981).

[1] We first address Atlantic's contention that Southern failed to properly renew its sublease with Atlantic. Atlantic claims that because Southern did not provide written notice to Atlantic of its intent to renew the sublease within 90 days prior to the expiration of the preceding term as required by the sublease, Atlantic is entitled to immediate possession of the property.

Both sides presented deposition testimony to the trial court on this issue. Celia Pait testified that on 30 July 1994, she worked for Puglia Development, Inc., and became responsible for renewing the sublease after Southern transferred the sublease to a corporation known as Bladen Investment. She further testified that she specifically recalled typing the letter renewing the sublease and dropping it in the mailbox. She stated that a copy of the renewal letter was present in her office file, and that according to her standard office procedure, the presence of a copy in that file indicated the letter had been mailed.

Charles Strickland, an employee of Atlantic, testified that he was originally responsible for handling the sublease for Atlantic. He also testified that Atlantic owned four office buildings in Atlanta, including a building at 185 Spring Street Southwest, the address Pait used on the renewal letter. While Strickland testified that the address on the letter was not his correct address at the time, he testified that all of the mail addressed to the four Atlantic offices was delivered to a central mail room and then forwarded to the correct addressees. Strickland stated that he did not recall seeing the letter sent by Pait or remember receiving it; however, he was unable to say that he did not receive the letter.

Steven McCurdy, another employee of Atlantic, testified that he was responsible for handling the sublease for Atlantic in the summer of 1994. McCurdy testified that he managed approximately 1500 land leases at that time and that he had individual files for each of those leases. Though Pait's letter was not in his file for the sublease, he did not examine the other lease files to see if the letter had been misfiled.

It is well settled in this jurisdiction that "[e]vidence that a letter has been mailed permits an inference that it was properly addressed

ATLANTIC AND EAST CAROLINA RY. CO. v. SOUTHERN OUTDOOR ADVER.

[129 N.C. App. 612 (1998)]

and stamped and that it was received by the addressee." *Hornby v. Penn. Nat'l Mut. Casualty Ins. Co.*, 62 N.C. App. 419, 423, 303 S.E.2d 332, 335, *disc. review denied*, 309 N.C. 461, 307 S.E.2d 364, 309 N.C. 461, 307 S.E.2d 365 (1983). *See also Pennington v. Flame Refractories, Inc.*, 53 N.C. App. 584, 586, 281 S.E.2d 463, 465 (1981) (" 'There is a presumption that mail, with postage prepaid and correctly addressed, will be received.' ") (Citation omitted.)

In the instant case, Pait testified that she typed the letter renewing the sublease and put it in the mail. Because no evidence exists to dispute this fact, the presumption arose that Atlantic received the letter. Although Atlantic's employees testified that they did not recall seeing or receiving the letter, they could not positively state that they did not receive the letter. Since Atlantic could not say with certainty that it did not receive the renewal letter, it did not overcome the presumption created by Pait's testimony. The trial court therefore properly granted summary judgment for defendants on this ground.

[2] We next address Atlantic's contention that Southern violated paragraph 16 of the sublease rider by failing to furnish Atlantic with written certification regarding contamination prior to 14 November 1994, the date of the expiration of the first renewal term, when Southern knew the State contended that a condition of contamination existed on the property. Paragraph 16 of the sublease rider provides, in pertinent part:

16. (a) Upon expiration of the term of this agreement or any renewal thereof or within five days of giving or receiving notice of termination of this agreement, whichever first occurs, Lessee shall furnish Lessor with a written certification that the premises have not been contaminated by Lessee's operations, or if a condition of contamination exists or is believed to exist on any part of the premises, Lessee shall give written notice of that fact to Lessor, and Lessee shall promptly eliminate said condition.

While Atlantic contends the word "term" as used throughout the sublease means each five-year period after which renewal is required, defendants contend the word "term" means the completed sublease up to its 30-year limit. The trial court found that the requirement of paragraph 16 that Southern provide written certification regarding contamination of the property "applies at the expiration of the term of the Lease or any renewal thereof[,]" and that Southern did not breach this provision of the sublease by not furnishing such certifi-

ATLANTIC AND EAST CAROLINA RY. CO. v. SOUTHERN OUTDOOR ADVER.

[129 N.C. App. 612 (1998)]

cation when it effectively renewed the lease on 30 July 1994. In cases in which we are called upon to interpret a contract,

> it is the duty of this Court to ascertain the intention of the parties at the time the contract was executed. In most cases when the intention of the parties is ambiguous the question of what the parties intended is best left for the jury. However, in cases where the language is clear and unambiguous, construction is a matter of law for the court. In those cases, the court's only duty is to determine the legal effect of the language used and to enforce the agreement as written.

*Computer Sales International v. Forsyth Memorial Hospital,* 112 N.C. App. 633, 634-35, 436 S.E.2d 263, 264-65 (1993) (citations omitted), *disc. review denied,* 335 N.C. 768, 442 S.E.2d 513 (1994).

We first note that the word "term" as used throughout the sublease refers to each five-year period after which renewal is required, and not the completed sublease up to its 30-year limit. The habendum clause of the sublease specifically states that the initial or "primary" term of the sublease consists of a period of five years, and that all successive or "renewed terms" shall also consist of five-year periods. However, the relevant issue with respect to this assignment of error is not how to define the word "term," but to determine whether Southern was required to furnish Atlantic with written certification regarding contamination of the property after each five-year renewal period, or after the completed sublease up to its thirty-year limit.

After reviewing the record in the instant case, it is evident that Southern was not required to furnish Atlantic with written certification regarding contamination of the property after each five-year renewal period. The first sentence of paragraph 16 clearly provides that the duty of Southern to make any certification to Atlantic regarding contamination arises only when the sublease expires or is terminated. Further, paragraph 15, which immediately precedes paragraph 16, discusses the ability of Atlantic to terminate the sublease in the event of default by Southern, and the remainder of paragraph 16 discusses the consequences of Southern vacating the property. There is also no indication in the record that Atlantic required Southern to provide written certification regarding contamination of the property upon the renewal of the sublease in 1989. "Given the rule of construction that the terms of a written contract are to be construed most strongly against the party who drafted the instrument," *O'Grady v. Bank,* 296 N.C. 212, 227, 250 S.E.2d 587, 597 (1978), we conclude

Southern is only required to give Atlantic certification regarding contamination pursuant to paragraph 16 upon vacating the property. Thus, the trial court properly granted summary judgment for defendants on this ground.

[3] We now turn to Atlantic's final contention, that Southern violated paragraph six of the sublease rider by failing to furnish Atlantic with a written report detailing all releases, as defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980, required to be reported to federal, state, or local authorities in accordance with relevant regulations. We note, however, that Atlantic did not allege a violation of the provisions of paragraph six by Southern in its complaint and did not move to amend its pleadings to include such an allegation. Thus, the issue of an alleged violation of paragraph six by Southern was not properly before the trial court. By addressing this issue, the trial court improperly ruled on a moot question. *See Page v. Aberdeen*, 263 N.C. 820, 140 S.E.2d 537 (1965). We therefore instruct the trial court to modify its order by striking paragraphs six and seven of its findings of fact.

For the above reasons, we conclude the trial court properly granted summary judgment for defendants.

Modified and affirmed.

Judges GREENE and LEWIS concur.