ULTRA INNOVATIONS, INC., Plaintiff v. FOOD LION, INC., Defendant

No. COA97-981

(Filed 21 July 1998)

### 1. Contracts— reasonable efforts to perform—promotion and sale of lapel pins

The issue of whether defendant employed reasonable commercial efforts in promoting and selling lapel pins was properly submitted to the jury even though the correspondence constituting the agreement between the parties did not specifically articulate defendant's duties regarding the promotion and sale of the pins; North Carolina law requires each party to employ reasonable efforts to perform the obligations assumed under the agreement.

### 2. Appeal and Error— instructions—consent of parties

The issue of whether the trial court erred in a breach of contract action by failing to instruct the jury on the principles of partial and substantial breach was not properly before the Court of Appeals because defendant expressly agreed to the manner in which the court presented the issues to the jury.

Appeal by defendant from judgment entered 25 November 1996 by Judge Thomas W. Seay, Jr. in Rowan County Superior Court. Heard in the Court of Appeals 31 March 1998.

*Klutz, Reamer, Blankenship, Hayes & Randolph, L.L.P., by Malcolm B. Blankenship, Jr. and James F. Randolph, for plaintiff-appellee.*

*Poyner & Spruill, L.L.P., by Douglas M. Martin and Keith H. Johnson, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Defendant Food Lion, Inc. (Food Lion) appeals from a judgment awarding plaintiff Ultra Innovations, Inc. (Ultra) $488,796.00 for breach of contract. The relevant facts follow.

In the fall of 1994, Ultra approached Food Lion with a proposal to sell lapel pins depicting characters from the movie "Snow White and the Seven Dwarfs," which was scheduled for release and retail distribution in Food Lion stores. By memorandum dated 13 September

1994, Ultra presented Food Lion with an offer to purchase the lapel pins, and on 3 October 1994, Food Lion accepted the offer by issuing purchase orders for a total of 2,205,000 pins. The purchase price for each pin was $0.68, and Food Lion made payments to Ultra totaling $989,604.00. The express terms of the resulting agreement are in dispute.

Ultra contends that Food Lion placed two separate purchase orders on 3 October 1994. The first, or "initial order," was for 1,785,000 pins, and the second, or "repeat order," was for 420,000 additional pins. Ultra further contends that it agreed to accept Food Lion's initial order on a "guaranteed sale basis," which would allow Food Lion to return all unsold pins for a full refund. Ultra maintains, however, that Food Lion's repeat order was not subject to a sale guarantee. It is Ultra's position that the guaranteed sale provision covered only 1,785,000 of the total pins ordered. Moreover, Ultra argues that to invoke the guaranteed sale provision under the terms of the initial order, Food Lion had to return all unsold pins by 15 December 1994 to a single location for pickup by Ultra. The parties orally agreed to extend this deadline to 28 December 1994 to prolong the sales promotion. Food Lion, however, did not ship all of the unsold pins to a single location by the 28 December 1994 deadline. Instead, Food Lion shipped the remaining pins back to its nine respective distribution centers. Ultra contends that because of Food Lion's failure to meet this pre-condition, Food Lion could not invoke the guaranteed sale provision.

Food Lion, on the other hand, contends that it placed only one purchase order with Ultra and that the single order of 2,205,000 pins was on a guaranteed sale basis. Food Lion argues that Ultra invited it to "increase" its initial order by 420,000 during contract negotiations. Further, Food Lion maintains that it never agreed to any pre-conditions affecting its ability to invoke the guaranteed sale provision, and assuming *arguendo* that it did agree to such pre-conditions, Ultra waived them. It is Food Lion's position that because it sold only 1,023,269 of the total pins purchased, Ultra was due $695,822.92, and Food Lion was entitled to recover its overpayment of $239,731.08.

Ultra filed suit against Food Lion for breach of contract, claiming that Food Lion owed Ultra a balance of $509,796.00 on the transaction account, or alternatively, for goods sold and delivered. Food Lion answered by denying liability and asserting a counterclaim alleging that Ultra owed Food Lion $239,781.08 for pins purchased but not

subsequently sold to its retail customers. The case was tried before a jury at the 18 November 1996 civil session of Rowan County Superior Court. At the close of all of the evidence, the trial court instructed the jury that if it found that Food Lion had breached its duty to reasonably promote and sell the lapel pins, then it could find Food Lion liable for breach of contract. The trial court also instructed the jury that if it found Food Lion liable to Ultra for breach of contract, it did not need to address the issue of whether Ultra breached the contract as well. The jury deliberated and returned a verdict for Ultra in the amount of $488,796.00 From the judgment entered on the jury's verdict, Food Lion appeals.

On appeal, Food Lion raises four assignments of error. The first of these assignments, however, is deemed abandoned, because Food Lion failed to argue the alleged error in its brief. *See* N.C.R. App. P. 28 (b)(5). The remaining assignments of error present the following questions: (1) whether the trial court erred in not directing a verdict for Food Lion on the issue of whether it failed to make reasonable efforts to promote and sell the pins supplied by Ultra; (2) whether the trial court erred in instructing the jury that it could find Food Lion liable for breach of contract if it found that Food Lion failed to reasonably promote and sell the pins; and (3) whether the trial court erred in instructing the jury that if it found Food Lion in breach of the parties' contract, it needed not address the issue of whether Ultra had also breached the contract. We have carefully considered each of these assignments, and we discern no error in the proceedings below.

[1] Food Lion first argues that the trial court erred in denying its motion for directed verdict on Ultra's claim that Food Lion failed to make reasonable efforts to promote and sell the lapel pins. We note that Food Lion does not challenge the sufficiency of the evidence to support Ultra's claim. Instead, Food Lion contends that the issue of whether it employed reasonable commercial efforts in promoting and selling the pins could not properly be addressed to the jury, because it was not specifically alleged in Ultra's complaint and because this requirement was not explicitly set forth in the parties' agreement. We disagree.

A contract incorporates not only its express terms but all terms that are necessarily implied "to effect the intention of the parties," provided that the express terms do not prevent such an inclusion. *Lane v. Scarborough*, 284 N.C. 407, 410, 200 S.E.2d 622, 624 (1973) (citing 4 Williston, *Contracts* § 601B (3d ed. 1961)). Furthermore, "[i]t

is a basic principle of contract law that a party who enters into an enforceable contract is required to act in good faith and *to make reasonable efforts* to perform his obligations under the agreement." *Weyerhaeuser Co. v. Building Supply Co.*, 40 N.C. App. 743, 746, 253 S.E.2d 625, 627 (1979) (emphasis added). " 'Good faith and fair dealing are required of all parties to a contract; and each party to a contract has the duty to do everything that the contract presupposes that he will do to accomplish its purpose.' " *Id.* at 746, 253 S.E.2d at 627-28 (quoting 17A C.J.S. *Contracts* § 451, at 564 (1963)).

In the present case, Ultra sued Food Lion for the balance owed on the account representing Food Lion's purchase orders for the Snow White lapel pins. By executing the purchase orders, Food Lion agreed to purchase the lapel pins at a cost of $0.68 per pin and to distribute them in Food Lion's retail stores. Although the correspondence constituting the agreement between the parties did not specifically articulate Food Lion's duties regarding the promotion and sale of the pins, North Carolina law requires each party to employ reasonable efforts to perform the obligations assumed under the agreement. *See id.* Therefore, this issue was properly submitted to the jury, and defendant's assignment of error is overruled.

Next, Food Lion argues that the trial court erred by instructing the jury that it could find Food Lion in breach of the contract if it found that Food Lion failed to make reasonable efforts to promote and sell the lapel pins. Food Lion contends that the instruction was prejudicial, because the court had previously stated that it did not intend to charge the jury on that claim "unless something unusual happen[ed]." Our resolution of the preceding issue renders this assignment of error moot; therefore, we proceed to Food Lion's final assignment of error.

[2] Food Lion argues that the trial court erred in failing to instruct the jury on the legal principles of partial and substantial breach. Food Lion contends that by failing to give this instruction, the trial court prevented the jury from finding that Ultra had also breached the contract. However, this issue is not properly before us, because Food Lion's counsel expressly agreed to the manner in which the court presented the issues to the jury.

The following exchange occurred during the charge conference:

THE COURT: Yes. In other words, it would be this way and see how this goes: Issue one would be whether the Defendant breached.

Issue two would be whether the Plaintiff breached. Issue three would be what amount is the Plaintiff entitled to recover. Issue four, whether or not it's the Defendant that's entitled to recover. If they answered issue one, yes, they would skip two and go to three. If they answered issue number one, no, and issue number two, yes, they skip number three and go to four.

MR. MARTIN (Food Lion): I believe that would work.

THE COURT: I think it would, too.

MR. RANDOLPH (Ultra): That's fine, Your Honor.

In view of the fact that Food Lion expressly consented to the statement of the issues as they were ultimately presented to the jury, Food Lion has waived its right to challenge this instruction on appeal. *See* N.C.R. App. P. 10(b)(2). This assignment of error, then, fails.

In light of the foregoing, we hold that Food Lion enjoyed a fair trial, free from prejudicial error.

No error.

Chief Judge EAGLES and Judge JOHN concur.