**FORREST DRIVE ASSOCIATES, a North Carolina General Partnership, Plaintiff,**

v.

**WAL–MART STORES, INC., Defendant.**

**No. 1:98CV00519.**

United States District Court, M.D. North Carolina.

Sept. 17, 1999.

---

Gary V. Mauney, Wyrick, Robbins, Yates & Ponton, L.L.P., Raleigh, NC, William F. Maready, Law Offices of William F. Maready, Winston–Salem, NC, for Forrest Drive Associates, plaintiff.

Daniel Alan M. Ruley, William Kearns Davis, Bell, Davis & Pitt, P.A., Winston–Salem, NC, Jon B. Comstock, Todd P. Guthrie, Wal–Mart Stores, Inc., Bentonville, AR, for Wal–Mart Stores, Inc., defendant.

## *ORDER*

OSTEEN, District Judge.

On August 13, 1999, the Recommendation of the United States Magistrate Judge was filed and notice was served on the parties pursuant to 28 U.S.C. § 636. Thereafter, the Court received plaintiff's objections to the Recommendation and defendant's response to the objections.

The Court has appropriately reviewed the parties' submissions *de novo* and finds they do not change the substance of the United States Magistrate Judge's rulings which are affirmed and adopted.

**NOW, THEREFORE,** pursuant to the Recommendation of the United States Magistrate Judge, it is **ORDERED** that defendant's motion for summary judgment

(docket no. 18) is granted and that this action be, and the same hereby is, dismissed.

## RECOMMENDATION AND ORDER OF UNITED STATES MAGISTRATE JUDGE

### *Statement of the Case and Facts*

This case is a breach of contract action stemming from the lease of store space in a shopping center in Mount Airy, North Carolina. Forrest Drive Associates (hereinafter plaintiff) claims that Wal–Mart Stores, Inc. (hereinafter defendant) breached its lease with plaintiff by vacating its store space in the shopping center prior to the expiration of the lease which the parties had signed. Defendant has moved for summary judgment on all of plaintiff's claims.

The facts of this case and the terms of the lease between the parties are relatively undisputed. The main disputes in the case involve interpretations of the lease in light of the facts and relevant law.

In 1985, plaintiff's predecessor in interest, Rockford Associates, was the owner of a new shopping center in Mount Airy, North Carolina. Rockford Associates was a partnership between plaintiff and PMN. Plaintiff was and is owned by Richard Vaughn, Kester Sink and Howard Woltz. PMN, in turn, was a partnership of Lat Purser, Tommy Norman, and Judd McAdams. In 1990, plaintiff bought out PMN's interest in Rockford Associates and became the sole owner of the shopping center. From this point forward, "plaintiff" will be deemed to include Rockford Associates because, for purposes of the instant case, plaintiff's interest is derived from, and the same as, Rockford Associate's interests.

Plaintiff needed an anchor tenant for the new shopping center, so it sought out defendant, and entered into lease negotiations. Essentially, defendant provided its standard form lease and the parties negotiated over the cost per square foot. The negotiations were conducted by Purser and McAdams, although the other partners did have the opportunity to review the lease before it was signed. In the end, the parties agreed on a twenty-year lease for 65,904 square feet at a rate of $3.55 a year per square foot.

Woltz testified in his deposition that this rate was below market value, but was acceptable for two reasons. First, the lease contained a clause which paid plaintiff a portion of defendant's gross receipts after seven years. Second, and more importantly, smaller tenants in the center would pay higher rent based on the traffic that defendant was expected to generate. (Plaintiff's Resp., Ex. 4, p. 37) Purser also testified that the lease was acceptable because of the minimum rent. (Defendant's Motion, Ex. J., p. 59) Plaintiff agreed to make the building conform to plans submitted by defendant.

There are several other provisions of the lease which are relevant to this suit. Central to the case is paragraph 7(a) which contains a "USE OF PREMISES" clause which states that "Lessee intends that the Demised Premises will be used by the Lessee in the operation of a discount department store, but Lessor agrees the store may be used for any lawful purpose." The clause also specified establishments which could and could not occupy other parts of the shopping center. The parties recognized that the prohibited business could inconvenience Wal–Mart's customers and adversely affect its business.

Also important are the following clauses:

(1) Paragraph 17 titled "ASSIGNMENT AND SUBLETTING" which states in part that

> Lessee shall have the right at *any time* to *sublet the Demised premises or any part thereof or to assign* this Lease; provided, that no such subletting or assignment shall relieve Lessee of any of its obligations hereunder. (emphasis added)

(2) Paragraph 22 titled "LESSEE'S FIXTURES, EQUIPMENT AND GOODS" which provides in relevant part that

Any and all fixtures, equipment and goods installed by Lessee shall be and remain the property of Lessee, and *Lessee may, at any time, remove any and all fixtures,* goods and equipment installed by it in, on or about the Demised Premises; provided, that Lessee shall promptly repair any damage or injury to the Demised Premises caused by such removal. (emphasis added)

(3) Paragraph 23 titled "ADDITIONS, ALTERATIONS, OR REMODELING" which says in relevant part that

Lessee or any of its assignees or subtenants shall have the right to make any alterations, improvements or additions to the Demised Premises for the purpose of its business or the business of its assignees or subtenants; provided, that such alterations, improvements or additions shall be made in accordance with the requirements of local ordinances and public authorities having jurisdiction thereover, and further provided that the value of the property shall not be diminished thereby.

Following the signing of the lease in 1986, defendant did occupy the leased space and did begin to operate a discount department store. The endeavor was so successful, that by early 1990, defendant began to talk with plaintiff about expansion and plaintiff began to acquire options on adjoining property to facilitate the possible expansion. At the time the options were purchased, Vaughn and Sink knew that defendant was only gathering information so that a final decision on expansion would be made by defendant's Real Estate Committee (hereinafter the Committee). (Defendant's Motion, Ex. F, pp. 75–76; Ex. H, p. 50)

In October of 1990, the Committee decided to proceed with expansion, and an expansion plan was presented to the Committee on December 17, 1990. However, upon viewing the plan, the Committee decided not to approve it, and instead opted for relocation. Sink knew of the possibility of relocation by December 18, 1990. (Id., Ex. O–3, O–4).

In January of 1991, Tim Dockery of Granite Development (hereinafter Granite) began assisting defendant in locating a suitable site for a new store. (*Id.,* Ex. K–90 [and Ex. 1]) It is noteworthy that Vaughn, who is plaintiff's managing partner, owns a 25% interest in Granite. (*Id.,* Ex. N–7) His son is also an owner of Granite and Granite's offices are located in the same building as Vaughn's. Vaughn was aware in April or May of 1991 that defendant was being shown relocation sites. (Id., Ex. F., p. 93–94) Finally, Granite has served as plaintiff's property manager at the shopping center since plaintiff bought out PMN's interest in Rockford Associates. (*Id.,* Ex. F–93–94, Ex. M–9)

On April 8, 1991, Vaughn was informed by defendant that he should not spend money on real estate options and defendant reminded him that any plans had to be presented to the Committee. (*Id.,* Ex. D, ex. 13) Between April and August of 1991, plaintiff continued to try to convince defendant to expand at the original site rather than move to another site. However, in January of 1992, defendant selected a relocation site near the original shopping center which was approved by its Committee on June 1, 1992. John S. Clark Co., which has Vaughn as its president, was awarded the construction contract on the new store. On September 15, 1993, defendant relocated to the new store and ceased all operations at the original store. Defendant continued to fulfill its rent obligations under the lease and agreed with plaintiff to cancel the lease on about one-third of the leased space to allow plaintiff to lease that area to another discount retailer. Since that time, defendant has been able to sublet the rest of the empty space to a retail tractor company and a second dis-

count retail store.[1]

### Plaintiff's Claims

In its complaint, plaintiff raises seven claims for relief. They are as follows: (1) Breach of contract for failure to operate a discount store in the shopping center for twenty years and for abandoning the premises, (2) Breach of express covenant for the same actions alleged in claim 1, (3) Breach of implied covenant based on the same actions, (4) Breach of the implied covenant of good faith and fair dealing for signing a lease which misrepresented defendant's intentions about fulfilling the entire term of the lease and for having plaintiff obtain land options which defendant never intended to use, (5) Fraud for representing that it intended to stay at the shopping center for the entire term of the lease when it did not and for having plaintiff obtain land options that defendant did not intend to use, (6) Negligent misrepresentation based on defendant's employee Sandra Watson having plaintiff obtain land options when she knew or should have known that they would not be used for expansion, and (7) Unfair and deceptive trade practice based on the above described conduct. Defendant has moved for summary judgment as to all of these claims.

### Summary Judgment Standards

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the evidence in a light most favorable to the non-moving party. *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990). When opposing a properly supported motion for summary judgment, the party cannot rest on conclusory statements, but must provide specific facts, particularly when that party has the burden of proof on an issue. *Id.* "The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, *in the form of admissible evidence*, that could carry the burden of proof of his claim at trial." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir.1993) (emphasis added). A mere scintilla of evidence will not suffice. Rather, there must be enough evidence for a jury to render a verdict in favor of the party making a claim. A few isolated facts are not sufficient. *Sibley v. Lutheran Hosp. of Maryland, Inc.*, 871 F.2d 479 (4th Cir.1989).

Because all of plaintiff's claims arise under state law, special rules apply. When state law is unclear, the federal court must rule in such a manner as it appears the highest state court would rule if presented with the issue. Where the state's highest court has not decided the particular issue, the federal court should examine the rulings of the lower state courts. Rulings of the lower courts may be considered as persuasive evidence of state law, but they are not binding on the federal court should it be convinced the

---

1. Defendant protests a number of plaintiff's unverified factual allegations as follows:

 In addition, Plaintiff has included inaccurate and incomplete factual representations without citation to the record. For example, Plaintiff asserts that there has been no discount department store in the center since Wal–Mart ceased operations (Pl.Response, p. 5.) However, Plaintiff does not contest Wal–Mart's summary judgment evidence that the space is now leased, in part, to discount retailers Dollar General and Goody's. (UMF 22 & 23.) Plaintiff also im-plies that Wal–Mart has enforced or refused to waive competing business and restrictive use provisions in the lease even after relocating. (Pl.Brief, pp. 5–6.) Plaintiff cites no evidence for this proposition because there is none.

 (Defendant's Reply Brief, at 2.)

 The Court agrees and further notes that the Dollar Store is, in fact, a prohibited business under the Competing Business clause. All of this contradicts and detracts from plaintiff's position and supports defendant's.

highest court would rule to the contrary. *Sanderson v. Rice*, 777 F.2d 902, 903 (4th Cir.1985), *cert. denied*, 475 U.S. 1027, 106 S.Ct. 1226, 89 L.Ed.2d 336 (1986). Furthermore, the federal court must rule on state law as it exists, as opposed to surmising or suggesting an expansion of state law. *Burris Chemical, Inc. v. USX Corp.*, 10 F.3d 243 (4th Cir.1993).

### Discussion
### Contract Claims

■ Plaintiff's first three claims are essentially contract claims which rely on the same underlying actions by defendant, and can therefore be addressed together. In order to succeed on a breach of contract claim in North Carolina, plaintiff must ultimately prove that (1) the parties had a valid and enforceable contract and (2) that defendant breached that contract. *Jackson v. California Hardwood Co., Inc.*, 120 N.C.App. 870, 871–872, 463 S.E.2d 571, 572–573 (1995). Here, defendant claims that plaintiff cannot establish that defendant breached any provision of its lease.

Plaintiff contends that defendant breached the lease in two ways. First, plaintiff claims that defendant violated the "USE OF PREMISES" provision (Paragraph 7(a)) in the lease by failing to operate its own discount department store on the premises for twenty years. Second, plaintiff claims that defendant breached the default clause (Paragraph 16) of the lease by leaving the store space vacant for a period of time. Defendant disagrees with any interpretation of the lease which would produce such a result.

■ In North Carolina, "[i]f the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996). If a contract is clear and unambiguous, the meaning of the contract is a matter of law for the Court. *Atlantic and East Carolina Railway Co. v. Southern Outdoor Advertising, Inc.*, 129 N.C.App. 612, 501 S.E.2d 87, 90 (1998). "[T]he court's only duty is to determine the legal effect of the language used and to enforce the agreement as written." *Id.*, quoting, *Computer Sales International, Inc. v. Forsyth Memorial Hospital, Inc.*, 112 N.C.App. 633, 634–35, 436 S.E.2d 263, 264–65 (1993), *rev. denied*, 335 N.C. 768, 442 S.E.2d 513 (1994). In order to be ambiguous, a contract must be "fairly and reasonably susceptible to either of the constructions asserted by the parties." *Glover v. First Union National Bank of North Carolina*, 109 N.C.App. 451, 456, 428 S.E.2d 206, 209 (1993). In the instant case, the contract is not ambiguous.

■ Plaintiff's first argument is that defendant was bound under the lease to operate its discount department store in the leased space for the full twenty-year term of the lease and that it breached this promise by moving its store to another location. Plaintiff bases this argument on its interpretation of the "USE OF PREMISES" clause of the lease—again which reads "[l]essee intends that the Demised Premises will be used by the Lessee in the operation of a discount department store, but Lessor agrees the store may be used for any lawful purpose."

According to plaintiff, the first clause of that sentence is a binding rather than permissive statement of intent to operate a discount department store. Also according to plaintiff, the second clause of the sentence does not change the binding nature of the intent statement, but instead is present only to allow defendant to use space within its discount department store to set up smaller specialty shops without having to seek plaintiff's approval. Plaintiff believes this is the necessary interpretation of the use provisions because the first clause uses the words "Demised Premises," while the second clause of that sentence uses the word "store." Plaintiff believes that the disputed provision must necessarily be read as saying that defendant must use the "demised premises" as one of its discount department "stores,"

but within that "store" it can have smaller stores without seeking additional permission.

The problem with plaintiff's proposed construction is that it relies on unstated inferences as opposed to the actual language of the contract. Plaintiff wants the phrase "used for any lawful purpose" to be restricted to subletting space. Nothing in the contract suggests that the lawful purpose be so restricted, as opposed to meaning that defendant Wal–Mart could sublet part or all of the space whether it occupied any of the space or not.

Even if the Court were to accept plaintiff's view that the second part of the sentence only permits defendant to sublet by opening small stores within a larger store, this does not change the plain and unambiguous meaning of the first part of the sentence. The first part of the clause merely states that defendant *intends* to open a discount department store. It does not state that defendant *will* open such a store, nor does it go further and unequivocally bind defendant to maintain the store in the leased premises for the entire twenty-year term of the lease. Plaintiff asks the Court to ignore the plain language and instead, base meaning on inferences which plaintiff seeks to insert. The sentence, in fact, unambiguously reads that defendant wants to open a discount department store in the leased space and also that lessor agrees defendant can use the space for other legitimate purposes which would include any form of subletting. The clause does not bind defendant to use the premises for a discount department store for the period of the lease.

If any doubts remain as to whether the plain reading of the "USE OF PREMISES" clause of the lease is correct, the rest of the lease and the law of North Carolina removes them. Most telling is paragraph 17 of the lease which is titled "ASSIGNMENT AND SUBLETTING." This paragraph explicitly states that defendant had the right to sublet any *or all* of the leased space *at any time*. This section is inconsis-

tent with any reading of the "USE OF PREMISES" clause which would prohibit defendant from subletting the entire space and instead, require defendant to operate a discount department store in the leased space. Plaintiff's suggested construction renders nugatory this assignment and subletting clause.

■ Plaintiff's proposed construction violates several basic North Carolina contract construction principles. These are: The court will derive the intent of the parties as embodied in the entire agreement, it will give effect to all parts of the contract and will not construe as meaningless any part when a meaning can be found by any reasonable construction of the contract. *Lefler Bros. v. C.W. Lane & Co., Inc.,* 167 N.C. 267, 83 S.E. 463 (1914). Therefore, plaintiff's construction must be rejected. Its reading of the "USE OF PREMISES" clause would render meaningless the "ASSIGNMENT AND SUBLETTING" clause.

Plaintiff faces this same problem with paragraphs 22 and 23 which allow defendant to "at any time, remove *any and all fixtures,* goods and equipment installed by it" (emphasis added) and to make alterations and additions for subtenants and *assignees.* These clauses too are inconsistent with a requirement that defendant only operate its own discount department store in the leased space at all times.

■ Even if the Court were to ignore the other clauses in the contract and look solely at the "Use of Premises" clause to see if it constituted a "continuous occupancy" clause, plaintiff fares no better. North Carolina courts will enforce a lease containing a continuous operations clause, but the provision must be explicit and unambiguous. In *Pleasant Valley Promenade v. Lechmere, Inc.,* 120 N.C.App. 650, 464 S.E.2d 47 (1995), the lease *explicitly* stated that the defendant had to open and operate a retail store in the leased premises for seven consecutive years. This explicit covenant was enforced. *Id.* at 661–662, 464

**584**

S.E.2d at 57. However, in another case, the North Carolina Supreme Court has stated that in the absence of a specific provision, a tenant is not required to occupy, use, or continue to use the leased premises "even though one of the parties, or both, expected and intended that they would be used for the particular purpose to which they seemed to be adapted." *Jenkins v. Rose's 5, 10, and 25 cent Stores,* 213 N.C. 606, 197 S.E. 174, 175 (1938).

The lease in *Jenkins* did not contain a continuous use clause, but instead required a minimum rent with a percentage of gross sales also being paid as rent. The defendant in that case, like defendant in the case at bar, moved out of the leased premises, but continued to pay the minimum rent. The North Carolina Supreme Court held that this action was allowed because the lease did not contain an explicit continuous use provision. (It noted that the

**2.** These rules have been more recently applied by the North Carolina Court of Appeals. *Lowe's of Shelby, Inc. v. Hunt,* 30 N.C.App. 84, 226 S.E.2d 232, *rev. denied,* 290 N.C. 662, 228 S.E.2d 452 (1976).

**3.** Defendant cites cases where courts have found that leases similar to the one involved in this case did not require continuous operation of the intended business. *See Oklahoma Plaza Investors v. Wal–Mart Stores, Inc.,* 155 F.3d 1179 (10th Cir.1998)(no continuous operations clause where lease stated "premises being leased will be used ... in operation of a discount store" but lease contained a sublet and assignment clause and a right to remove fixtures at any time); *Scot Properties, Ltd. v. Wal–Mart Stores, Inc.,* 138 F.3d 571 (5th Cir.1998)(refusing to imply continuous operation covenant from lease with both minimum and percentage rent); *United Associates, Inc. v. Wal–Mart Stores, Inc.,* 133 F.3d 1296 (10th Cir.1997)(no implied covenant of continuous operation from "will be used" language where sublease, assignment, and fixture removal clauses exist); *Cascade Drive Limited Partnership v. Wal–Mart Stores, Inc.,* 934 F.2d 61 (5th Cir.1991)(any implied operations covenant negated by sublet clause).

The policy rationale behind these cases is easy to understand. A continuous operations clause in a lengthy lease has the potential to bind the lessee to operate a business in the leased premises even if it is disastrously unprofitable. Other courts, and this Court, are

plaintiff had completely protected its interests by virtue of the minimum rent clause.) [2]

Plaintiff tries to distinguish *Jenkins* by pointing to the "USE OF PREMISES" clause in the instant case and asserting that it constitutes a critical distinction between *Jenkins* which had none. However, the argument fails for the basic reason that "USE OF PREMISES" clause in the lease at issue here does not clearly and explicitly require continuous operation and occupancy by defendant Wal–Mart. Rather, the clause is plainly and unambiguously permissive.

The parties have cited a number of cases from other jurisdictions. These cases have no bearing on this Court's interpretation of North Carolina law. Moreover, such authorities favor defendant, not plaintiff.[3]

hesitant to find such an express requirement or to imply one, and most especially where other clauses of the lease would contradict it or be rendered meaningless by such a construction.

Some of plaintiff's cases perhaps arguably support its position, but most, if not all, are distinguishable because the leases contain explicit, mandatory language. *See United Dominion Realty Trust, Inc. v. Wal–Mart Stores, Inc.,* 413 S.E.2d 866, 307 S.C. 102 (S.C.Ct.App.1992)(finding continuous lease provision where lease contained "*will be used*" language, lease had a percentage rent clause, and importantly lease bound Wal–Mart to utilize its best efforts to produce gross sales); *Columbia East Associates v. Bi–Lo, Inc.,* 386 S.E.2d 259, 299 S.C. 515 (S.C.Ct.App.1989)(explicit provision that the premises could be used only to operate a supermarket and, thus, use as warehouse improper); *China Doll Restaurant, Inc. v. Schweiger,* 580 P.2d 776, 119 Ariz. 315 (Ariz.Ct.App.1978)(explicit provision that lessee "shall use said premises for conducting and operating a restaurant ... and for no other purposes," could be breached by abandonment-move); *Ayres Jewelry Co. v. O & S Building,* 419 P.2d 628 (Wyo.1966)(lease contained "shall use" and "other purpose" language violated by abandonment-move); *Simhawk Corporation v. Egler,* 202 N.E.2d 49, 52 Ill.App.2d 449 (1964)(lease stated that premises can be used only for shoe store). Two cases cited by plaintiff do not help because

In the end, plaintiff has not produced any decision which applies North Carolina legal doctrines, involves a lease with permissive language similar to the one at issue in this case, and yet finds an express or implied duty of continuous operations. The case law cited by the parties demonstrates that courts will likely find against similarly situated plaintiffs on this issue. To the extent that plaintiff urges the adoption of a "substantial consideration" test, a federal court may not do so, but must apply state law as it exists. Because establishing a duty and breach are two of the essential elements of plaintiff's first three claims for relief, those claims fail as a matter of law and should be dismissed.[4]

### Breach of Implied Covenant of Good Faith and Fair Dealing

 In North Carolina, there is an implied covenant of good faith and fair dealing in every contract which requires that a party to the contract " 'has the duty to do everything that the contract presupposes that he will do to accomplish its purpose.' " *Ultra Innovations, Inc. v. Food Lion, Inc.*, 130 N.C.App. 315, 502 S.E.2d 685, 687 (1998), *quoting Weyerhaeuser Co. v. Godwin Building Supply Co., Inc.*, 40 N.C.App. 743, 746, 253 S.E.2d 625, 627 (1979). Here, plaintiff's fourth claim for relief alleges that defendant breached this duty by explicitly and implicitly promising to operate a discount department store in the leased premises for the entire term of the lease and then failing to do so. Plaintiff also alleges that defendant signed the lease without ever intending to stay in the premises for the entire term of the lease and had plaintiff procure land options for possible expansion without intending to use them.

In dealing with plaintiff's first three claims for relief, this Court has already found that defendant had neither an implicit nor explicit duty to operate a discount department store in the leased premises. Therefore, it cannot have breached this duty.

As for the allegations involving defendant's intent, plaintiff fails to produce any material evidence to prove defendant acted with bad intent. Plaintiff has pointed to evidence that defendant was aware that it *could* leave before the lease term ended, but fails to produce any evidence whatsoever that defendant *intended* to leave before the term of the lease when it signed the lease. (Plaintiff's Resp., Ex. 17) And, more importantly, the lease clearly put *plaintiff on notice* that defendant Wal–Mart could leave and sublet at any time. Plaintiff fails to point to any evidence that Wal–Mart took any action to alter this expectation. Finally, plaintiff has not produced any evidence that defendant was not actually considering expansion at plaintiff's

they apply the "substantial consideration" test, a legal doctrine which plaintiff has not shown would be applied in North Carolina. *See BVT Lebanon Shopping Center, Ltd. v. Wal–Mart Stores, Inc.*, 01–A–01–9710–CV–00607, 1999 WL 236273 (Tenn.Ct.App.1999) (unpublished); *Blount Partners LP v. Wal–Mart Stores Inc.*, BC170721 (Cal.Super.Ct.1998) (unpublished). Those courts looked to see whether the minimum rent amount was "substantial consideration" for the leased premises. If it was not, then the courts are apparently willing to presume that the percentage rent clause signifies an intent by the parties that the lessee generate that rent through continuous operations. *Id.*

4. Plaintiff also claims that the default clause, which allows plaintiff to reenter and relet the premises if they are deserted for more than 30 days supports its argument that there is a continuous operations requirement. However, this clause merely permits plaintiff to begin mitigating its damages in the event of default to protect the property in case of abandonment or to relet for higher than the minimum rent if Wal–Mart left the premises and did not relet with some alacrity. This one clause is not a requirement that Wal–Mart operate a discount department store on those premises. Tellingly, although Wal–Mart supposedly "deserted" the premises in this case, plaintiff has not declared default or otherwise resorted to the remedy allowed by the lease, but has instead chosen to continue to accept minimum rent payments from defendant, reclaim and relet ½ of the premises, and allow defendant to sublease the remaining floor space.

shopping center when it asked plaintiff to procure land options. Plaintiff's claim that defendant deliberately misled plaintiff to acquire options after it decided to relocate is belied by the evidence showing that some of plaintiff's partners and their related companies were vigorously munching at the Wal–Mart feed trough early and often in order to make money from the relocation. That the partners may have violated their duties to share information concerning the partnership cannot be blamed on defendant Wal–Mart. *See infra.* Plaintiff's fourth claim for relief fails as a matter of law and should be dismissed.

### *Fraud*

 Plaintiff's fifth claim for relief is that defendant defrauded it by concealing several material facts. To establish a claim for fraud in North Carolina, plaintiff must prove "(1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) which was relied upon and which resulted in damages to the injured party." *Pleasant Valley Promenade, Inc.,* 120 N.C.App. at 663, 464 S.E.2d at 57. Plaintiff claims that defendant committed fraud by representing that it would operate a discount department store in plaintiff's shopping center for twenty years when it did not intend to, asking plaintiff to obtain land options when Wal–Mart did not intend to use them, and representing plaintiff until April of 1992 that it intended to expand at the shopping center.[5] It claims that defendant's actions in negotiating a lease that it did not intend to keep are part of a corporate policy which has been repeated around the nation.

First, as stated above, plaintiff has failed to produce any evidence that defendant did not, at the time it signed the lease, intend to operate a discount store in the shopping center for the entire term of the lease.

The move did not occur until years after the lease was signed. Plaintiff has also produced no evidence of any corporate policy to defraud landowners around the country. Second, and to the contrary, there is evidence in the record to show that plaintiff was not defrauded by any of defendant's actions. The entire partnership is charged with the knowledge held by partners acting on the partnership's behalf. N.C. Gen.Stat. § 59–42; *Howard v. Hamilton,* 28 N.C.App. 670, 675, 222 S.E.2d 913, 917, *rev. denied,* 290 N.C. 94, 225 S.E.2d 323 (1976). Here, it is undisputed that the two partners negotiating the lease knew that the lease did not have an express operating covenant and one of them clearly understood that the lease allowed defendant to leave the premises before the lease expired. (Defendant's Motion, Ex. I, p. 35; Ex. J., pp. 11, 58) Also, these men testified that defendant did not misrepresent the lease to them during the negotiations. (*Id.,* Ex. I, p. 57, Ex. J., pp. 23) This is clear evidence that no misrepresentations were made, that nothing was concealed, and that plaintiff could not have reasonably relied on any misrepresentation in any event because it knew exactly what the plain language of the lease allowed.

 As for the allegation that defendant did not intend to use land options it asked plaintiff to purchase, again plaintiff has produced no evidence concerning defendant's intent at the time of the request. And, again, to the contrary, two of plaintiff's partners, Kester Sink and Richard Vaughn, knew that the expansion was not a certainty and would be subject to a vote from defendant's Real Estate Committee. (Defendant's Motion, Ex. F, pp. 75–76; Ex. H, p. 50) Next, plaintiff has not shown that defendant had any duty to disclose its expansion/relocation plans to plaintiff. Finally, there is undisputed evidence in the record that plaintiff knew as early as December 18, 1997 that the expansion plan

---

5. Plaintiff raised the allegations involving the land options and relocation plans in its complaint but has not argued and defended them in the summary judgment briefing. This alone is enough to deem them abandoned and grant summary judgment for defendant.

had not been approved and that relocation was a possibility. (Defendant's Motion, Ex. O–4) Also, Vaughn's involvement with Granite Development, plaintiff's management company, necessarily provided him (and hence plaintiff) with notice of the possible move because Granite was involved in facilitating the relocation. And, Granite, being plaintiff's management company, surely had a duty to disclose its knowledge to plaintiff.[6] Accordingly, plaintiff's claim of fraud fails and defendant is entitled to summary judgment on plaintiff's fifth claim for relief.

### Negligent Misrepresentation

Plaintiff's sixth claim for relief is that defendant negligently misrepresented that it wished to get land options for possible expansion when it did not intend to do so. As stated above, plaintiff has produced no evidence that defendant was not truly considering expansion when it made its request for options. Therefore, plaintiff has not established a factual basis for this claim and defendant is entitled to summary judgment.[7]

### Unfair and Deceptive Trade Practices

Plaintiff's seventh and final claim for relief is that the alleged actions of defendant as set out in the previous claims amounted to unfair and deceptive trade practices because they had the tendency to and did deceive and mislead plaintiff. N.C. Gen.Stat. § 75–1.1. For the reasons set out previously, defendant's actions neither had the tendency to deceive plaintiff, nor actually did so. Plaintiff's claim fails and summary judgment should be granted for defendant.

**IT IS THEREFORE RECOMMENDED** that defendant's motion for summary judgment (docket no. 18) be granted and that Judgment be entered dismissing this action.

**IT IS ORDERED** that objections to the Recommendation are due August 23, 1999. Responses to objections are due August 31, 1999.

August 13, 1999.

---

6. Plaintiff has not even alleged how it was damaged by any late notice of the move.

7. Plaintiff has also abandoned this claim by failing to argue it on summary judgment.