SHEDD, Circuit Judge.
I respectfully dissent. The dispute between the parties should be governed by the unambiguous language of the contract and not, as the majority incorrectly rules, by the parties’" so-called course of performance.
The relevant contractual language provides:
*29 5. The County will charge [ADM] for water actually delivered to [ADM] ..., and [ADM] will pay for such water, at the Lowest Commercial Rate in effect at the time of such deliveries provided, however, that in no event shall such charge exceed the following amounts:
(d) For fiscal years subsequent ... to 1988, an amount per 1,000 gallons not to exceed $1.50 times the ratio of the change in the PPI [Producer Price Index] ....
(f) Should the maximum charges as specified herein be insufficient to meet the Net Operating and Maintenance Expense [NOME] for any fiscal year ..., the charges for all customers for the year in question shall be increased on an equal percentage basis by the County (including increasing the maximum charges to [ADM] beyond that otherwise authorized by this Agreement) in order to raise sufficient funds to cover ... such [NOME].[1]
The parties agree that ADM must pay either the amount described in section 5(d), which is the PPI rate, or the amount described in section 5(f), which is the NOME rate. The parties, of course, disagree as to which of these two rates applies.
To determine which rate applies, we must first turn to the express terms of the contract. Under North Carolina law, “the most fundamental principle of contract construction [is] that the courts must give effect to the plain and unambiguous language of a contract.” Johnston County v. R. N. Rouse & Co., 331 N.C. 88, 414 S.E.2d 30, 34 (1992). If the language of a contract is unambiguous, the intention of the parties must be inferred from the words of the contract. Walton v. City of Raleigh, 342 N.C. 879, 467 S.E.2d 410, 411 (1996). Under such circumstances, the “court’s only duty is to determine the legal effect of the language used and to enforce the agreement as written.” Atlantic & E. Carolina Ry. Co. v. Southern Outdoor Adver., Inc., 129 N.C.App. 612, 501 S.E.2d 87, 90 (1998). A contract is not ambiguous merely because the parties differ on how to interpret its terms. Walton, 467 S.E.2d at 412. Unambiguous contracts are interpreted by the court as a matter of law. First-Citizens Bank & Trust Co. v. 4325 Park Rd. Assocs., 133 N.C.App. 153, 515 S.E.2d 51, 54 (1999); World-Wide Rights Ltd. Partnership v. Combe, Inc., 955 F.2d 242, 245 (4th Cir.1992).
Although the relevant contractual provisions require careful reading and cross-referencing, they are nonetheless unambiguous. The PPI rate in section 5(d) — an indexed rate that is not in dispute — applies unless “the maximum charges as specified” in section 5 of the contract are “insufficient to meet the [NOME] for any fiscal year.” Section 5(f). If the “maximum charge” ADM would be required to pay in a given year for its water consumption based on the PPI rate[2] is “insufficient to meet” the qualifying NOME expenses allowed under the contract, then the County may charge ADM the higher NOME rate under section 5(f).[3]
*30 The qualifying NOME expenses are clearly defined in section 4(c) of the contract. They include direct expenses for salaries, postage, utilities, uniforms, insurance, chemicals, laboratory supplies, training and travel, and many other typical expenses incurred in operating a water system.
The parties dispute two categories of expenses under the definition of NOME. The first disputed provision allows the County to add into NOME direct expenses for “[cjapital equipment used to operate or maintain the Water System.” Section 4(c)(21). The County presented evidence of such expenses in the relevant years, but the district court precluded these amounts from the calculation of NOME. Because the unambiguous language of the contract clearly allows the County to include these expenses in calculating NOME, the district court’s exclusion of them was erroneous. The second disputed provision states that “all expenses which are reimbursed by special fees, such as tap on fees” shall be excluded from NOME. Section 4(c)(21)(ii) (emphasis added). The County, for example, charges each customer a tap-on fee when it physically connects that customer to the water system. This fee pays for the labor and plumbing supplies required to make the connection. Because the customer is required to reimburse the County for these particular expenses by paying the fee, the County in effect incurs no net expense. Allowing the County to add its tap-on expenses to NOME when they have already been directly reimbursed by the customer would improperly inflate NOME and, more importantly, would violate the terms of the contract.
In addition to tap-on fees, the County charges acreage, capacity, and availability fees. Unlike tap-on fees, there is evidence that these three fees do not directly reimburse the County for any specific expenses incurred by the County. If these fees do not represent “expenses which are reimbursed by special fees,” they should have no effect on NOME. Nevertheless, the district court ruled that the amount of revenue recovered by these fees should be subtracted from NOME. NOME, however, is a calculation of expenses, not revenues. Based on the contract, not even tap-on fees are actually subtracted from NOME; rather, the corresponding expenses reimbursed by the tap-on fees are excluded from NOME. Requiring the County to subtract its revenues from the acreage, capacity, and availability fees improperly reduces NOME and thus affects the determination of whether the County may charge ADM the higher NOME rate in section 5(f). Accordingly, the district court erred by requiring, as a matter of law, the subtraction of these fees from NOME.[4]
The majority ignores the unambiguous language of the contract and instead purports to decide the case, as a matter of law, based on the parties’ so-called course of performance. North Carolina law provides that when a contract governed by the commercial code “involves repeated occasions for performance by either party unth knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement.” N.C. Gen. Stat. § 25-2-208(1) (emphasis added). ADM did not know the “nature of the *31 [County’s] performance” (ie., how the County calculated the water rate) until it first disputed the County’s new water rate in 1999. After ADM disputed the rate, the County provided copies of its internal worksheets. Upon receiving the County’s internal calculations, ADM did not “accept” or “acquiesce” in the County’s calculation. Instead, ADM informed the County that the information “still does not satisfy ADM that the new rate is in compliance with the terms of the contract,” and, most tellingly, ADM refused to pay the increased rate imposed by the County. Thus, there is no course of performance between the parties, as defined by § 25-2-208, that is “relevant to determine the meaning of the agreement” in this case. Id.
The district court’s misplaced reliance on course of performance necessarily affects the determination of the maximum rate the County is allowed to charge ADM under the express terms of the contract. Accordingly, I would reverse the grant of summary judgment in favor of ADM.
Even if I were to agree that the parties’ course of performance qualifies as relevant evidence to help determine the meaning of the agreement, I would reverse summary judgment and remand for trial. Instead of treating the parties’ so-called course of performance as relevant evidence, the district court and the majority essentially replace the parties’ written agreement with what they consider to be the parties undisputed course of performance. This purported course of performance is, however, disputed at its very core. The County’s evidence shows that the internal worksheets, which the district court and now the majority basically treat as the new contract, were not used to calculate ADM’s rate. Instead of viewing this evidence in the light most favorable to the County, which we must do in our summary judgment review, the majority does its own weighing of the evidence and rejects it as unbelievable.[5] A jury, rather than the majority, should be allowed to decide which evidence to believe.
Finally, the majority fails to consistently apply what it deems to be the parties’ so-called pre-litigation course of performance. In the worksheets, which the majority views as sacrosanct for all other purposes, the County included depreciation in NOME. To be consistent, the majority would necessarily have to conclude that this too was part of the parties’ course of performance. Nevertheless, the majority insists that depreciation cannot be included in this calculation because the express terms of the contract prohibit the County from doing so. This conclusion by the majority is internally inconsistent with its view of the parties so-called course of performance, and it is also an incorrect ruling based on the evidence in the record.[6]

. Section 5(f) also includes language allowing the addition of debt service expenses for Phase I and Phase IA into the calculation. These debt service obligations were fulfilled by 1993, so they are not relevant to this case.

. There are several "maximum charges” listed in section 5, but, based on the particular facts of the case, the only “maximum charge” specified in section 5 that could be used to make this necessary calculation under section 5(f) is the PPI rate under section 5(d).

. ADM argues that "maximum charges” means all charges paid by all customers. *30 There is no support for this interpretation based on the plain terms of the contract.

. At oral argument, counsel for ADM conceded that availability fees do not directly reimburse any specific expenses. Counsel for ADM also conceded that the County’s argument relating to acreage and capacity fees has merit.

. The majority finds "it difficult to believe that any reasonable jury would” believe the County’s denial that the worksheets were used to set ADM’s rate. The majority’s prediction on what a jury might do with this evidence might be correct, but that question is for the jury to decide.

. At the very least, there is a question of fact whether depreciation can be included in NOME. The express terms of the contract allow the County to include capital maintenance and operation expenses in NOME. The County's expert opined that depreciation can be an appropriate way to estimate capital maintenance and operation expenses. We must credit this testimony in our review of a grant of summary judgment.